Filed 2/26/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CITY OF SIERRA MADRE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SUNTRUST MORTGAGE, INC.,<br><br>    Defendant and Appellant;<br><br>DAVID J. PASTERNAK,<br><br>    Real Party in Interest and Respondent. | B284550<br><br>Los Angeles County<br>Super. Ct. No. GC046442 |

APPEAL from an order of the Superior Court of Los Angeles County, William D. Stewart, Judge. Affirmed.

Wright, Finlay & Zak, Jonathan D. Fink and Ruby J. Chavez for Defendant and Appellant.

Dapeer, Rosenblit & Litvak and William Litvak for Plaintiff and Respondent.

Pasternak, Pasternak & Alsbrook, David J. Pasternak and Blake C. Alsbrook for Real Party in Interest.

Michael N. Feuer, City Attorney (Los Angeles), Wilfredo R. Rivera, Assistant City Attorney, Christina V. Tusan, Jeremy Berzon and Rebecca Morse, Deputy City Attorneys for The People

of the State of California as Amici Curiae on behalf of Plaintiff and Respondent and Real Party in Interest.

---

## INTRODUCTION

This is the second appeal before us involving a public nuisance created by Jeffrey M. and Taryn N. Hildreth (the Hildreths) on their residential property in Sierra Madre. (See *City of Sierra Madre v. Hildreth* (Dec. 26, 2018, B281729) [nonpub. opn.].) Because the Hildreths refused to abate the nuisance, the City of Sierra Madre (City) brought the present action against them and their mortgage lender, appellant SunTrust Mortgage, Inc. (SunTrust), and sought the appointment of a receiver to undertake the remediation. SunTrust did not object to the appointment of the receiver or the remediation plan, but when the receiver borrowed $250,000 to fund the remediation work, SunTrust objected to the issuance of the lien securing that loan because it had priority over SunTrust's preexisting lien. The receiver and real party in interest in this appeal sought approval for the super-priority lien because no lender would loan funds without it. SunTrust appeals the court's order authorizing the super-priority lien.

SunTrust's primary argument is that Health and Safety Code section 17980.7—a statute authorizing the appointment of a receiver in cases involving remediation of substandard buildings—does not explicitly provide that a court may issue a super-priority lien which displaces previously existing liens. We reject this argument because the use of super-priority liens has been approved in California since at least 1915. SunTrust's

2

remaining arguments are without merit. We therefore affirm the order.

## FACTS AND PROCEDURAL BACKGROUND

**1.     Over the course of more than 10 years, the Hildreths undertake several unpermitted construction projects on their residential property.**

In July 1998, the Hildreths purchased a small home in Sierra Madre. The home was in substantial disrepair and the Hildreths began a complete remodel—without the benefit of any permits from the City. In October 1998, after the City issued a stop work order due to the absence of permits, the Hildreths requested and obtained permits for plumbing, building, electrical, and mechanical work relating to the renovation. Although the Hildreths eventually completed the work contemplated by the permits and moved into the home, they never notified the City the work was completed or requested a final inspection.

Around the time the Hildreths began the renovation, they decided they wanted to develop the home and the property for commercial use—specifically, a wine tasting and sales business. In September 1999, the Hildreths applied for a conditional use permit describing their proposed business operation, but the City never issued the requested permit. The Hildreths, however, proceeded to develop the property for their proposed wine business. In 2005, the City discovered the Hildreths had excavated a large pit on the eastern side of their property which caused a portion of an adjacent alley to collapse. The City immediately issued a stop work order and required the Hildreths to work with a licensed engineer and a licensed shoring contractor, together with the City Building Department, to install

3

temporary shoring. The Hildreths later constructed an unpermitted cement structure in the pit.

Then, in early 2009, the City discovered the Hildreths had—again without permits—excavated the western portion of their property to a depth of 12 feet below ground level, including the area underneath the western side of the house. The excavated area ran the entire length of the property and extended east to the unpermitted subterranean cement structure. In June 2009, the City issued another stop work order. It appears SunTrust refinanced the Hildreths' mortgage during this time, as a deed of trust evidencing a mortgage loan of $276,000 was recorded in March 2009.

In 2010, apparently undeterred by the City's prior warnings, the Hildreths erected a large, unpermitted deck in their front yard that extended over the public sidewalk adjacent to their property. In late October 2010, after receiving complaints from City residents, the City inspected the property and issued another stop work order.

**2.     The City files a nuisance action naming the Hildreths and SunTrust as defendants.**

On December 1, 2010, the City filed the present action against the Hildreths and SunTrust seeking declaratory relief and asserting claims for public nuisance, municipal code violations, and state housing law violations. The following month, in January 2011, the court issued a preliminary injunction identifying a minimum of 30 violations of state and local building codes and prohibiting the Hildreths from performing any additional work or residing in the home without required permits, inspections, and approvals by the City. The court also ordered the Hildreths to submit the requisite applications, plans,

documents, and fees to the City regarding the outstanding violations and, upon approval by the City, to remediate the home and the property.

**3. After the Hildreths fail to remediate the property, the court appoints a receiver. SunTrust does not object to the appointment.**

The Hildreths refused to cooperate with the City or comply with the preliminary injunction. In August 2012, more than a year and a half after the court issued the preliminary injunction, the City asked the court to appoint a receiver to take custody and control of the Hildreths' property. SunTrust did not object to the appointment. Citing the Hildreths' continuing obstruction, the court granted the City's request and appointed David J. Pasternak to act as the receiver. Because the Hildreths obstructed the receiver's work, the City and the receiver agreed to postpone the remediation until after the court entered judgment in the nuisance action.

**4. Following a lengthy bench trial, the court finds in favor of the City on all claims and enters judgment accordingly. SunTrust does not participate in the trial.**

The court conducted a 27-day bench trial during the spring of 2016. SunTrust did not participate in the trial but reserved the right to challenge the issuance of any lien that would displace its position as first lienholder.

The court issued a lengthy and thorough statement of decision in support of its judgment in favor of the City on all claims. As pertinent here, the court found the unpermitted and unapproved construction constituted a public nuisance under the City's municipal code as well as under state law, and injunctive

relief to abate the nuisance was appropriate. The court entered judgment in the City's favor in January 2017.

Also, and as part of the judgment, the court ordered the previously-appointed receiver to oversee remediation of the property. The court found the Hildreths would not be willing or able to remediate the property if given the opportunity to do so. The Hildreths were required to pay the receiver's costs, however.

**5.      The receiver presents a remediation plan, which the court adopts. SunTrust objects to the proposed super-priority lien for the lender funding the remediation but does not object to the plan.**

In early April 2017, the receiver provided his remediation report to the court. The property needed extensive and costly work performed. Specifically, a contractor would need to fill the excavated portion of the lot with slurry, increase the home's structural support, and remove the large deck encroaching on the public sidewalk. The lowest of the three contractor bids was approximately $250,000 and the bulk of the expense related to filling in the pit under the Hildreths' home.

The receiver also advised the court that the value of the property after remediation would be $175,000 to $200,000 as a vacant lot and $465,000 to $495,000 with the rehabilitated home. Because the cost to remediate the home was relatively small and the increase in value was substantial, the receiver recommended rehabilitating, rather than demolishing, the home.

To fund the remediation, the receiver proposed borrowing funds from South County Bank (bank), one of very few institutional lenders willing to provide such funding. The bank would require, however, its loan to be secured by a receiver's certificate with first priority, i.e., a senior lien on the property

6

ahead of all other recorded liens and encumbrances (super-priority lien). The receiver indicated no lender would loan money to the receiver unless it received a super-priority lien. The property as it then existed had no equity in light of the SunTrust lien. And even after remediation, the property value would be insufficient to satisfy the SunTrust lien, the substantial attorney's fees and cost award to the City (approximately $875,000), and the receiver's costs of administration. In other words, according to the receiver, a lender would not be repaid unless it had a super-priority lien on the property.

SunTrust objected to the receiver's proposed remediation plan but only to the extent it provided a super-priority lien for the bank that would displace SunTrust as the senior lienholder. SunTrust did not challenge the receiver's approach or the cost of the remediation.

## 6.    The court authorizes the receiver to borrow funds as proposed. SunTrust appeals.

On July 5, 2017, the court granted the receiver's request in large part.[1] Specifically, the court authorized the receiver to borrow $250,000 from the bank in exchange for a receiver's certificate in the amount of the loan with first priority ahead of all other encumbrances if SunTrust opted not to fund the remediation. SunTrust opted not to do so and appealed from the July 5, 2017 order.

---

[1] The July 5, 2017 order substantially modified a June 2, 2017 order authorizing the receiver to proceed as he proposed. The court reconsidered that order, however, and the July 5, 2017 order is the court's final ruling.

# DISCUSSION

SunTrust contends the trial court erred in authorizing the receiver to issue a receiver's certificate with first priority over all other liens and encumbrances.

## 1.    The appeal is not moot.

We first address, and reject, the City's contention that the present appeal is moot.

" ' "[W]hen, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal." ' [Citations.]" (*Panoche Energy Center, LLC v. Pacific Gas & Electric Co.* (2016) 1 Cal.App.5th 68, 95–96.) " 'The pivotal question in determining if a case is moot is ... whether the court can grant the plaintiff any effectual relief. [Citations.] If events have made such relief impracticable, the controversy has become "overripe" and is therefore moot.' [Citation.]" (*Id*. at p. 96.)

The City contends SunTrust's appeal is moot because the receiver, in accordance with the order appealed by SunTrust, obtained a loan from South Coast Bank to fund the remediation of the Hildreths' property and secured that loan with a super-priority lien. Essentially, the City contends SunTrust forfeited the right to challenge the court's July 5, 2017 order authorizing the receiver to provide a super-priority lien because SunTrust did not obtain a stay of the order pending appeal. We disagree. Although it appears the remediation is complete at this point, that fact does not prevent us from resolving the issue

8

presented here concerning the relative priority of liens on the Hildreths' property. And even if the property had been sold and the funds improperly dispersed, SunTrust might still have a remedy in equity against the recipient of those funds.

2. **The court did not abuse its discretion in authorizing a super-priority lien to secure the loan taken by the receiver to fund remediation of the Hildreths' property.**

### 2.1. Legal Principles

The function of the receiver is to aid the court in preserving and managing the property involved in a particular lawsuit for the benefit of those to whom it can ultimately be determined to belong. (*Free Gold Mining Co. v. Spiers* (1901) 135 Cal. 130, 132; *City of Santa Monica v. Gonzalez* (2008) 43 Cal.4th 905, 930 (*Gonzalez*); *City of Chula Vista v. Gutierrez* (2012) 207 Cal.App.4th 681, 685 (*Chula Vista*).) A receiver is an officer of the court and is subject to the court's continuing control; a receiver only has those powers granted to it by statute or an order of the court. (*Gonzalez*, p. 930; Code Civ. Proc., § 568.) The receiver, acting for the court, is not the agent of any party but acts for the benefit of all holding an interest in the receivership property. (*Gonzalez*, p. 930; Cal. Rules of Court, rule 3.1179(a).)

A receiver has the power, with court authorization, to take possession of property, receive rents, collect debts, borrow money, and sell real or personal property in receivership pursuant to court order. (Code Civ. Proc., §§ 568, 568.5.) The receiver acquires no title in the property but instead acts as an officer of the court, and title remains vested in those persons or entities in whom it was vested when the receiver was appointed. (*North v. Cecil B.*

9

*DeMille Productions, Inc.* (1934) 2 Cal.2d 55, 58; *Kaura v. Stabilis Fund II, LLC* (2018) 24 Cal.App.5th 420, 433.)

Most matters related to receiverships rest in the sound discretion of the trial court. As our Supreme Court noted in *Gonzalez*, for example, considerable deference is afforded to "court decisions that are drastic enough to extinguish an owner's interest in property" and to decisions regarding the demolition or rehabilitation of substandard structures. (*Gonzalez, supra*, 43 Cal.4th at p. 931.) Similarly, the amount of compensation paid to a receiver is within the court's discretion. (*People v. Riverside University* (1973) 35 Cal.App.3d 572, 587 ["It is settled that fees awarded to receivers are in the sound discretion of the trial court and in the absence of a clear showing of an abuse of discretion, a reviewing court is not justified in setting aside an order fixing fees."].) And although the receiver's compensation is typically paid from the receivership estate, the court has considerable discretion to determine who must ultimately bear the cost of the receivership. (See, e.g., *Ephraim v. Pacific Bank* (1900) 129 Cal. 589, 592 [noting "the general rule that the costs of a receivership are primarily a charge upon the fund in his possession" but that " 'it may sometimes happen that a direct liability is imposed upon the parties to the action, or upon some of them, for the remuneration of the receiver' " due to " 'irregularity of the appointment, or from the insufficiency of the fund, or out of the agreement between the parties' "]; *Baldwin v. Baldwin* (1947) 82 Cal.App.2d 851, 855 [" 'As a general proposition the costs of a receivership are primarily a charge upon the property in the receiver's possession and are to be paid out of said property. *However, this is not an invariable rule*. In many cases a direct liability is imposed upon the parties to the action, or upon some

10

of them, for the remuneration of the receiver.' "].) Here, as noted, the court imposed the cost of the receivership on the Hildreths. SunTrust has not challenged that determination.

Courts also have substantial discretion to authorize a receiver to borrow money to fund the preservation and management of property in the receivership estate, particularly where, as here, the estate does not produce income. In that circumstance, the receiver may ask the court to authorize the issuance of a receiver's certificate to the lender as security for money loaned to the estate. Typically, such a receivership certificate will have priority over all other liens—even preexisting liens. (See, e.g., 12 Miller & Starr, Cal. Real Estate (4th ed. 2018) §41.12, p. 41-33 ["Receivership certificates are then issued as evidence of the indebtedness and become liens on the subject property when issued under the direction and control of the court, usually with priority over all other liens, including preexisting liens."].) This too is a matter committed to the sound discretion of the court. (*Title Ins. & Trust Co. v. California Development Co.* (1915) 171 Cal. 227, 233 ["The questions here involved, i.e., whether receiver's certificates should be issued and whether those certificates when issued should be given priority over the other indebtedness of the defendant, rested largely in the discretion of the court below. That court, upon a consideration of all the facts, determined that the certificates should equitably be given priority over the bonds, and we think its conclusion should not be interfered with."]; 12 Miller & Starr, *supra*, pp. 41-33 to 41-34 ["Whether receiver's certificates should be issued, and whether those certificates when issued should be given priority over the other indebtedness already of record against the property, are decisions that rest largely in the discretion of the

11

court."].) But as the receiver points out, use of super-priority liens should be infrequent because the disturbance of preexisting liens may bring harsh consequences. (See 2 Clark on Receivers (3d ed. 1959) § 463, pp. 760–761 ["The authority to disturb existing liens should be exercised with great caution, and should be carried no further than actually necessary to attain the desired protection to the res."].)

### 2.2. SunTrust's arguments are without merit.

Notwithstanding the well-settled authority just discussed, SunTrust claims the court had no authority to give the bank a super-priority lien, thereby displacing SunTrust as the senior lienholder. SunTrust's arguments are not persuasive.

SunTrust first argues no statute authorizes the issuance of a super-priority lien. Here, the receiver was appointed under Code of Civil Procedure section 564 (a generally applicable receivership statute) and Health and Safety Code section 17980.7 (authorizing appointment of receivers to remedy building code violations). SunTrust's primary argument is that Health and Safety Code section 17980.7 does not explicitly authorize the issuance of a super-priority lien. That section specifically identifies the powers of a receiver appointed under the Health and Safety Code and provides, in pertinent part, that a receiver appointed to take control of a substandard building[2] has the power "[t]o borrow funds to pay for repairs necessary to correct the conditions cited in the notice of violation and to borrow funds to pay for any relocation benefits authorized by paragraph (6)

---

[2] A substandard building is defined in Health and Safety Code section 17920.3.

and, with court approval, secure that debt and any moneys owed to the receiver for services performed pursuant to this section with a lien on the real property upon which the substandard building is located. The lien shall be recorded in the county recorder's office in the county within which the building is located." (Health & Saf. Code, § 17980.7, subd. (c)(4)(G).) As SunTrust notes, that section makes no mention of a super-priority lien. And SunTrust urges us to infer from the plain language of the statute (i.e., the absence of language authorizing a super-priority lien) and the legislative history of section 17980.7 that the Legislature intended to *prohibit* super-priority liens when it adopted this statute in 1990 and amended it in 2001.

We conclude it is unnecessary to engage in a lengthy statutory analysis of Health and Safety Code section 17980.7 because, as noted, the receiver was also appointed under Code of Civil Procedure section 564. Section 568 of the Code of Civil Procedure—first enacted in 1872—gives a receiver appointed under section 564 very broad powers: "The receiver has, under the control of the Court, power to bring and defend actions in his own name, as receiver; to take and keep possession of the property, to receive rents, collect debts, to compound for and compromise the same, to make transfers, and generally to do such acts respecting the property as the Court may authorize." (Code Civ. Proc., § 568.) As already noted, the California Supreme Court long ago concluded a court may authorize a receiver to issue a super-priority lien in appropriate circumstances. (*Title Ins. & Trust Co. v. California Development Co.*, *supra*, 171 Cal. at p. 233.) And Health and Safety Code

13

section 17980.7, subdivision (c)(4)(H),[3] specifically gives a receiver appointed under that section the powers of a receiver appointed under Code of Civil Procedure section 564.

SunTrust also contends *Chula Vista*, *supra*, does not support the issuance of a super-priority lien. (207 Cal.App.4th at p. 681.) Specifically, SunTrust argues "courts may impose the costs [of the receiver] on the party who sought the appointment of the receiver or apportion them among the parties." That is true, as noted *ante*. And here the court has assigned the costs of the receivership to the Hildreths. That issue is distinct, however, from SunTrust's apparent concern that it might be unable to collect the debt owed by the Hildreths if it is not paid from the proceeds of sale of the property due to the new super-priority lien created by the receiver.

In any event, *Chula Vista* is of no assistance to SunTrust. There, a receiver was appointed under Health and Safety Code section 17980.7 to cure code violations in a residential building. (*Chula Vista, supra*, 207 Cal.App.4th at p. 684.) The court approved the receiver's request for a lien to secure his fees, but the receiver never recorded the lien. (*Id*. at p. 685.) Eventually, the lender (and senior lienholder) foreclosed and conveyed the property to a bona fide purchaser. (*Ibid*.) Several years later, the receiver filed an action against the lender seeking payment of his fees under a theory of unjust enrichment. (*Ibid*.) The issue on appeal was whether the lender "benefited" from the receiver's

---

[3] That portion of the statute states a receiver appointed under Health and Safety Code section 17980.7 has the power "[t]o exercise the powers granted to receivers under Section 568 of the Code of Civil Procedure."

14

services. (*Id*. at pp. 685–687.) As that issue is not remotely relevant to the present proceeding, we address it no further.

Finally, SunTrust points out that under the Health and Safety Code, the receiver may look to numerous sources for payment of receivership costs. For example, SunTrust notes the receiver could create a junior lien to secure a loan under Health and Safety Code section 17980.7, subdivision (c)(4)(G). Further, a receiver may look to the rents and profits produced by a property to pay for the cost of the receivership. (Health & Saf. Code, § 17980.7, subd. (c)(4)(E), (F).) Alternatively, the court could have appointed as receiver a nonprofit organization or community development corporation which would have been eligible to apply for grants to assist in the rehabilitation of the property. (Health & Saf. Code, § 17980.7, subd. (c)(2).) SunTrust also suggests the Hildreths, as owners, or the City, as the party that requested the receiver, should pay the costs of the receivership.

SunTrust correctly states the provisions of the statute at issue. But the fact that the court had a variety of options to choose from when it authorized the receiver to obtain funding for the needed remediation is beside the point. SunTrust cites no authority suggesting—and doesn't even argue—the court abused its discretion by authorizing a super-priority lien after considering all the facts and balancing the equities.

In any event, we would find no abuse of discretion on this record. The Hildreths refused to abate the nuisance they created on their property. SunTrust chose to take no action against the Hildreths, despite the fact the Hildreths were plainly in breach of

the deed of trust.[4] Accordingly, the court properly appointed a receiver to abate the nuisance and, notably, SunTrust did not object. Because neither the Hildreths nor SunTrust was willing to fund the costly remediation and the property did not produce any income, the receiver had to borrow money in order to proceed with the remediation. And as no lender would loan money to the receiver unless the loan was secured with a super-priority lien on the property, the only way to effect the remediation was to authorize the receiver's request to issue such a receiver's certificate. In short, the court did not abuse its discretion.

In closing, we note SunTrust repeatedly argues its interest in the Hildreths' property was inequitably displaced by the lender's super-priority lien. For example, SunTrust urges "[i]t is inequitable to allow [its] lien to be essentially stripped to nothing for a receivership that it did not request and which, as it will eat up most if not all the equity in the property, offers little to no benefit to [SunTrust]. It was not [SunTrust]'s duty to protect against and monitor the Hildreths' use of the property that they owned subject to a loan [t]hat was current or the City's related neglect. Therefore, [SunTrust]'s priority lien should not be sacrificed to pay for the remediation."

The critical point, unmentioned by SunTrust, is that its lien on the Hildreths' property was worthless (or nearly so) well before the court authorized the receiver to issue a super-priority lien.[5] The Hildreths persisted with unpermitted excavation and

---

[4] We note, for example, that under the deed of trust, the Hildreths agreed to preserve, maintain, and protect the property, not to allow it to deteriorate, and not to commit waste on it.

[5] As noted, the receiver concluded the property remediation would cost at least $250,000 and the value of the property after remediation

16

construction on the property and created the public nuisance which required remediation so costly it exceeded the value of the unimproved land. As a result, SunTrust had an inadequately secured loan and, due to California's anti-deficiency statutes, also had an extremely limited ability to obtain payment from the Hildreths directly.[6] Stated differently, the imposition of a super-priority lien by the receiver did not substantially prejudice SunTrust because prior to the remediation, SunTrust was the senior lienholder on a property with minimal (or perhaps negative) value and was unlikely to be repaid in any event. SunTrust's contention that it should remain the senior lienholder—and benefit from the increased property value provided by the remediation while bearing none of the cost—is simply untenable.

---

would likely be $175,000 to $200,000 as a vacant lot and $465,000 to $495,000 with the rehabilitated home.

[6] Although a mortgage lender is generally barred from suing its borrower to recover the balance of a mortgage loan when the value of the property is inadequate to satisfy the loan (see Code Civ. Proc., § 580b), a lender may bring an action against a borrower for " 'bad faith' " waste in appropriate circumstances. (*Cornelison v. Kornbluth* (1975) 15 Cal.3d 590, 604.) As Miller & Starr explains: "To the extent that there has been a reduction in the value of the property by depressed market conditions, the trustor or other person liable on the debt cannot be held personally liable. However, when the reduction in value resulting from bad-faith waste is the result of intentional or malicious action by the owner or person in possession, they can be held personally liable despite the limitations against personal liability on a purchase-money obligation." (5 Miller & Starr, Cal. Real Estate, *supra*, § 13:313, p. 13-1322.)

## DISPOSITION

The July 5, 2017 order authorizing the receiver to issue a receiver's certificate with first lien priority is affirmed. The City of Sierra Madre shall recover its costs on appeal.

## CERTIFIED FOR PUBLICATION

LAVIN, J.

WE CONCUR:


EDMON, P. J.


EGERTON, J.