Filed 3/5/21  Bedrosian v. Hadid CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| JOHN C. BEDROSIAN et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> MOHAMED HADID et al., <br><br> Defendants and Appellants. | B303713 <br><br> (Los Angeles County Super. Ct. No. SC129388) <br><br> **ORDER MODIFYING OPINION** <br> [There is no change in judgment] |

BY THE COURT:

It is ordered that the opinion filed herein on March 4, 2021, is modified as follows:

On page 1, delete counsel listings and replace with:

Lewis Brisbois Bisgaard & Smith, Roy G. Weatherup, Caroline E. Chan; Law Offices of Abdulaziz, Grossbart & Rudman, Bruce D. Rudman; and Larry A. Rothstein for Defendants and Appellants.

Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, Gary S. Lincenberg, Ariel A. Neuman and Shoshana E. Bannett for Plaintiffs and Respondents.

There is no change in judgment.

_____

RUBIN, P. J.                    MOOR, J.                    KIM, J.

Filed 3/4/21  Bedrosian v. Hadid CA2/5 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION FIVE

| | |
|---|---|
| JOHN C. BEDROSIAN et al., | B303713 |
| Plaintiffs and Respondents, | |
| v. | (Los Angeles County Super. Ct. No. SC129388) |
| MOHAMED HADID et al., | |
| Defendants and Appellants. | |

APPEAL from an order, of the Superior Court of Los Angeles County, Craig D. Karlan, Judge.  Affirmed.

Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, Gary S. Licenberg, Ariel A. Neuman and Shoshana E. Bannett for Plaintiffs and Respondents.

Lewis Brisbois Bisgaard & Smith, Roy G. Weatherup and Caroline E. Chan; Law Offices of Abdulaziz, Grossbart & Rudman, Bruce D. Rudman for Defendants and Appellants.

_____

Defendants Mohamed Hadid and Strada Vecchia, LLC appeal the trial court's order appointing a receiver to oversee the demolition of defendants' "megamansion." Although defendants agreed in the trial court that the unpermitted structure needed to be demolished, they now argue there was no evidence the house posed a danger to the plaintiffs or that it constituted a public nuisance, as the trial court found. They also argue that the order included an injunction for the demolition of their property which was invalid because the trial court did not order plaintiffs to post an injunction bond. We find no error and affirm.

### *FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiffs John Bedrosian et al. own homes in Bel Air at the bottom of a hillside. Perched above their houses is defendants' nearly-completed mansion (the Property). Plaintiffs sued defendants in 2018 for fraud, nuisance and related claims arising from defendants' unpermitted construction. The City of Los Angeles (City) was also named as a defendant with respect to plaintiffs' claim for a writ of mandate asking the City to remove "all improvements" on the Property.

The complaint alleged that defendants began construction on the megamansion in 2011, and over the next several years, the Los Angeles Department of Building and Safety (LADBS) issued 11 citations for Building Code violations. Despite multiple orders to stop the construction, defendants continued to build. In 2014, the LADBS revoked defendants' permits. Plaintiffs alleged the Property's construction created unsafe conditions on the slope above their homes, increasing the risk of slope failures and mudslides that could cause the Property to topple onto plaintiffs' homes.

In March 2019, plaintiffs moved for a temporary

restraining order requiring the City to enforce its regulations regarding demolition of illegal construction. The trial court held multiple evidentiary hearings, and ultimately found that "safety—both at the jobsite and for adjoining neighbors— necessitated" the demolition of certain portions of the structure. The pool deck structure and most of the third floor were removed pursuant to this order.[1] The court ordered plaintiffs to post a bond in the amount of $10,000.

In November 2019, plaintiffs filed an ex parte application for appointment of a receiver to take possession of the Property to demolish the structure down to the foundation. Plaintiffs moved under Code of Civil Procedure section 564, subdivision (b)(9) (Section 564(b)(9)) which provides for the appointment of a receiver in a pending proceeding " 'where necessary to preserve the property or rights of any party.' "[2] The trial court conducted a site visit, permitted supplemental briefing, and held two hearings. At the November 13, 2019 hearing, defendants' counsel *agreed* with plaintiffs that the entire structure needed to be

---

[1]     This order is not the subject of the present appeal.

[2]     Section 564(b)(9) provides in full, "(b) A receiver may be appointed by the court in which an action or proceeding is pending, or by a judge of that court, in the following cases:
    [¶] . . . [¶]
    (9) In all other cases where necessary to preserve the property or rights of any party."
    All further undesignated statutory references are to the Code of Civil Procedure.

3

demolished down to the foundation slab.[3]  Defendants' contractor testified that the structure could be demolished safely.[4]

On December 2, 2019, the trial court granted the application and appointed a receiver to oversee the demolition of the Property.  The court ordered that the house be demolished down "to the foundation slab" because it was not compliant with the Building Code and was a public nuisance.  It was undisputed that several "elements of the foundation were unapproved and fail to comply with the Los Angeles Building Code," and the LADBS Chief of Structural Plan Check and Seismic Retrofit Divisions had stated that "LADBS measures safety by code compliance."  As a result of defendants' failure "to address the slope issues" created by their unpermitted removal of "thousands of cubic yards of soil" from the property, the court observed that "it is simply unclear whether the remaining soil and slope can be relied upon to support the structure at issue, even if the foundation had been built as per approved plans."

The court concluded that the structure is a "public nuisance and a danger to the public" and that "Plaintiffs and other

---

[3]  At the November 13, 2019 hearing, the court said, "It sounds like even the defense is in agreement that this has to come down.  It sounds like what you're saying is:  we're willing to take it down, but we need to wait until we get approval of new plans."  Defense counsel responded, "Yes and yes.  We believe that our retrofit program could work."

[4]  The trial court asked defendants' contractor, "Do you have any question that you could do this safely?"  The contractor responded, "I would definitely consult a demolition engineer, for sure, and we would phase it. . . .  It can be done safely, absolutely."

individuals are at a legitimate risk of suffering damage and harm to their homes." The trial court appointed a receiver "to take possession, custody, and control" of the Property "for the sole purpose of demolishing" the Property, and "to address and remedy any and all soil[] and hillside stability issues." The court ordered the receiver to "work with necessary professionals to propose a plan to safely complete demolition of the structure on the Receivership Property (leaving the foundation slab and below-grade piles in place).

The parties returned for a hearing on December 20, 2019, to discuss payment of the receiver's fees. On January 21, 2020, the court entered an amended order adding language about payment of the receiver. The parties appeared again on January 31, 2020, on defendants' motion to stay which the trial court denied. In February 2020, defendants unsuccessfully moved for reconsideration, and then appealed.

## DISCUSSION

Defendants argue the trial court erred in authorizing the receiver to oversee the demolition of the Property because there was no evidence supporting the court's finding that plaintiffs' properties were in danger and the appointment order was not authorized by statute. Defendants also argue the trial court had no authority to appoint a receiver because "any right to abate the alleged nuisance had not been established at trial." Lastly, defendants argue the trial court abused its discretion in not requiring a bond under Code of Civil Procedure section 529, subdivision (a) (Section 529(a)).

### 1.  *Substantial Evidence of Danger*

Defendants first contend there was insufficient evidence the Property posed a danger to plaintiffs necessary to support

5

either the issuance of an injunction or the appointment of a receiver. We observe pointedly that the opening brief recites only the evidence in defendants' favor and omits evidence supporting the court's order. "When a party challenges on appeal the sufficiency of evidence, the party must discuss all the evidence supporting the court's ruling or the party waives the point." (*Gombiner v. Swartz* (2008) 167 Cal.App.4th 1365, 1374; see Cal. Rules of Court, rule 8.204(a)(2)(c).) Here, defendants purport to attack the sufficiency of the evidence in support of the trial court's finding of danger but do so without a fair recitation of all the evidence, favorable and unfavorable to them. We deem the contention waived.

Defendants' argument also fails on the merits. It is undisputed that the structure's foundation was built according to plans that were never submitted or approved by the City. It was further undisputed that the foundation violated several Building Code provisions. Foremost was that certain columns and beams had insufficient rebar. The LADBS Chief of Structural Plan Check and Seismic Retrofit Divisions, Shahen Akelyan, testified that LADBS measures safety by compliance with the Building Code.

Akelyan also testified that structure's Building Code violations compromised its ability to withstand an earthquake. Based on information provided by the structural engineer responsible for the project, LADBS concluded "the existing piles/columns are not adequate and could not support the structure." As a result, and because any effort to bring the structure into compliance would "severely compromise the integrity and safety of the existing structure," LADBS

6

determined the structure needed to be demolished to the foundation slab.

Finally, a geotechnical engineer expressed the opinion that in case of "a severe storm and/or significant seismic event, substantial amounts of earth material could fall rapidly onto the properties below, resulting in property damage and/or the potential for life-threatening injuries to those in its path," and "if the entire structure is demolished (with the exception of the below-grade piles) it would significantly increase the feasibility of stabilization of the currently unsafe hillside . . . ."

We conclude substantial evidence supported the court's express findings that the Property posed a danger to plaintiffs' properties because the structure could fail in an earthquake or storm and fall on the homes below.

## 2. *The Trial Court Was Authorized to Appoint a Receiver and Acted within its Discretion in Doing So*

Under Section 564(b)(9), the trial court may appoint a receiver "where necessary to preserve the property or rights of any party." A "receiver has, under the control of the court, power to bring and defend actions in his own name, as receiver; to take and keep possession of the property, to receive rents, collect debts, to compound for and compromise the same, to make transfers, and generally to do such acts respecting the property as the court may authorize." (§ 568.)

Defendants argue in their opening brief that the appointment order was unauthorized because it was issued before a final judgment. They cite as authority section 564(b)(3).[5]

---

[5] Section 564(b)(3) provides:

In their Respondents' Brief, plaintiffs remind defendants that the trial court appointed the receiver under a different section, one that does not require a judgment. The trial court's minute order states, "Under Code of Civil Procedure section 564, subdivision (b)(9), the Court is empowered to appoint a receiver 'where necessary to preserve the property or rights of any party.' The burden is on the moving party to establish the statutory grounds for appointment of a receiver. The Court finds that Plaintiffs have met their burden and have established a statutory basis for the appointment of a receiver under Code of Civil Procedure section 564, subdivision (b)(9)."

In their reply brief, defendants shift their argument to the statute under which the trial court appointed the receiver, Section 564(b)(9). Defendants contend the trial court acted without authority because Section 564(b)(9) only authorizes the appointment of a receiver where necessary to preserve "legally established rights" or rights "established at trial." Defendants cite no authority for this proposition. More fundamentally, defendants' argument is contrary to the statute's express language which broadly authorizes the appointment of a receiver when "an action or proceeding is pending." (§ 564, subd. (b).)

Having concluded that the trial court had the authority to appoint a receiver when it did, we review the court's order under the abuse of discretion standard of review. (*City of Sierra Madre*

---

"A receiver may be appointed by the court in which an action or proceeding is pending, or by a judge of that court, in the following cases:

[¶]

(3) After judgment, to carry the judgment into effect."

8

*v. SunTrust Mortgage, Inc.* (2019) 32 Cal.App.5th 648, 657.) Whether to appoint a receiver is "addressed to the sound discretion of the court, exercised upon all the facts [citation], and where a finding, based upon conflicting evidence, is to the effect that danger is threatened to property or funds, and the appointment of a receiver is made, it is seldom that the reviewing court will hold that the lower tribunal has been guilty of an abuse of the discretion confided to it. [Citation.]" (*Breedlove v. J.W. & E.M. Breedlove Excavating Co.* (1942) 56 Cal.App.2d 141, 143.)

More expressively, "considerable deference" is afforded to "court decisions that are drastic enough to extinguish an owner's interest in property" and to decisions regarding "the demolition of substandard structures that pose a substantial health and safety risk." (*City of Santa Monica v. Gonzalez* (2008) 43 Cal.4th 905, 930.) We conclude the court did not abuse its discretion in appointing a receiver. The facts that we have already described — the real danger as found by the court — support the trial court's exercise of its discretion to appoint the receiver.

## 3. *The Trial Court had the Authority to Order Nuisance Abatement*

Defendants argue the trial court had no authority to order the receiver to abate the alleged nuisance because the existence of a nuisance is a question of fact that "can only be determined by a jury." According to defendants, the "denial of a trial by jury to which a litigant is entitled constitutes a miscarriage of justice and requires reversal of the judgment."

Defendants have not been denied a trial on the nuisance claim. As defendants point out in their opening brief, a trial date had, in fact, been scheduled in this action. The trial court's finding that the Property constitutes a public nuisance was a

9

preliminary finding based on the evidence presented at this interim stage of the proceedings. "The trial court's order on a request for a preliminary injunction 'reflects nothing more than the superior court's evaluation of the controversy on the record before it *at the time* of its ruling; it is not an adjudication of the ultimate merits of the dispute.' " (See *People v. Uber Technologies, Inc.* (2020) 56 Cal.App.5th 266, 303–304.) Even if the trial court erred in finding the Property an actual nuisance — although this is hard to imagine—we would find no reversible error as the court's order was also supported on the undisputed fact that the Property was not code-compliant and created a serious danger to persons and property.

## 4. *Defendants Both Forfeited and Waived the Argument that an Injunction Bond Was Required*

Defendants argue the trial court abused its discretion in failing to require a bond under Section 529, subdivision (a) (Section 529(a)). That section broadly states that the trial court must require an undertaking when granting an injunction.[6] Defendants treat the injunctive portion of the receivership order

---

[6] Section 529(a) provides: "On granting an injunction, the court or judge must require an undertaking on the part of the applicant to the effect that the applicant will pay to the party enjoined any damages, not exceeding an amount to be specified, the party may sustain by reason of the injunction, if the court finally decides that the applicant was not entitled to the injunction. Within five days after the service of the injunction, the person enjoined may object to the undertaking. If the court determines that the applicant's undertaking is insufficient and a sufficient undertaking is not filed within the time required by statute, the order granting the injunction must be dissolved."

as a separate order for demolition, and argue it was a mandatory injunction. In defendants' view, this injunction is "null and void" because no bond was ordered.[7] The demolition order, to be sure, is part of the order appointing the receiver. We will assume but not decide that Section 529(a) applies because the order essentially grants a mandatory injunction. Nevertheless, we agree with plaintiffs that defendants both forfeited and waived their argument that a bond is required by failing to raise it in the trial court, and conceding the Property had to be demolished, leaving nothing to bond.

Upon granting a preliminary injunction, a court must require the applicant to post an undertaking to protect the enjoined party. (§ 529(a).) The undertaking must be in an amount sufficient to pay the enjoined party "any damages . . . [it] may sustain by reason of the injunction, if the court finally decides that the applicant was not entitled to the injunction." (*Ibid.*) Ordinarily, a preliminary injunction cannot take effect until the applicant provides such an undertaking. (See *City of South San Francisco v. Cypress Lawn Cemetery Assn.* (1992) 11 Cal.App.4th 916, 920.) The Section 529(a) bond requirement

---

[7] Defendants also argued that the order was automatically stayed because it contained a mandatory injunction. (See 9 Witkin, Cal. Procedure (5th ed. 2020), Appeal § 270.) Defendants filed a petition for writ of supersedeas in this court requesting a stay. We denied the writ on March 20, 2020, and the Supreme Court denied a petition for review on June 10, 2020. The focus of the opening and reply briefs on appeal is on the trial court's failure to require a bond, not that the order is automatically stayed. The parties do not tell us whether the property has been demolished or if the trial in this case has been re-scheduled or completed.

11

may be waived or forfeited by the party to be enjoined.  (See *Smith v. Adventist Health System / West* (2010) 182 Cal.App.4th 729, 744 (*Smith*).)  Waiver is the express relinquishment of a known right, whereas forfeiture is the failure to object or invoke a right.  (See *In re Sheena K.* (2007) 40 Cal.4th 875, 880, fn. 1.)

Defendants do not dispute that they failed to address the requirement of a bond with the trial court, either in the papers they filed in opposition to the application or during oral argument at the two hearings or in their motion for reconsideration.  They also acknowledge *Smith*'s holding that the bond requirement may be forfeited, but urge us not to follow *Smith*.  Defendants contend *Smith* is "inconsistent" with three cases:  *Neumann v. Moretti* (1905) 146 Cal. 31 (*Neumann*), *Griffin v. Lima* (1954) 124 Cal.App.2d 697 (*Griffin*), and *ABBA Rubber Co. v. Seaquist* (1991) 235 Cal.App.3d 1 (*ABBA*).

In *Smith*, the doctor-plaintiff sought a preliminary injunction that his status at a hospital be restored until his lawsuit was decided.  (*Smith, supra*, 182 Cal.App.4th at p. 738.)  The plaintiff argued in his application that a bond was "unnecessary."  (*Ibid.*)  The defendant did not respond to this argument or mention the bond requirement in its opposition papers.  (*Ibid.*)  In the order granting the preliminary injunction, the trial court stated only that no injunction bond was ordered to be posted.  (*Ibid.*)  The Court of Appeal concluded that by waiting to raise the issue until after the notice of appeal was filed, the defendant forfeited the right to a bond.  (*Id.* at pp. 748–749.)

Here, defendants had multiple opportunities to ask the court to require an injunction bond including at two hearings post the trial court's order appointing the receiver:  the December 20, 2019 hearing on payment of the receiver, and January 31, 2020

12

hearing on defendants' motion to stay. As in *Smith,* defendants did not address the issue in the trial court, but waited until four months after plaintiffs had applied for a receiver before raising the issue in its writ petition filed with this court.[8] By failing to assert the lack of a bond in a timely fashion, defendants have forfeited the issue. In words that could have been written with the present case in mind, the *Smith* court held: "[W]e are disinclined to allow parties to achieve a greater benefit by saving the injunction bond issue for appeal when it could have been dealt with more efficiently in the lower court with much less detriment to the party who obtained the injunction. Addressing the issue on appeal would encourage 'sandbagging.' " (*Smith, supra,* 182 Cal.App.4th at pp. 748–749.)

In addition to forfeiture, plaintiffs also argue the closely related concept of waiver—defendants affirmatively agreed in the trial court that demolition was necessary, and did not dispute the evidence that the Property was more valuable with the structure removed.[9] In their reply, defendants do not respond to plaintiffs'

---

[8] Defendants did, however, address other bonds, for example, offering to post an undertaking under section 917.5 if the trial court stayed the proceedings pending appeal.

[9] At the November 20, 2019 hearing, counsel for the bank that provided the construction loan asserted that "the value of the property as is—because we have a non-conforming structure on the property that we just cannot turn around and sell, for obvious reasons—is the same $8,000,000 value of the land, less the cost to completely demolish the structure, as well as pull the piles out of the ground, the slab, as well, in order to create a sellable piece of property." Defense counsel did not dispute this.

argument that this concession constituted a waiver and essentially told the trial court there was nothing to bond.

Defendants' acknowledgement that demolition was necessary confirms that they failed to raise the issue of a bond for tactical reasons. To the extent defendants might incur additional costs in the demolition conducted under the receiver's supervision, they have not cited to anything in the record showing that any amounts would be more than nominal. Under these circumstances, we conclude defendants elected not to raise the issue of a bond, thereby waiving the bond requirement. (See *City of Los Angeles v. Superior Court* (1940) 15 Cal.2d 16, 23 [finding waiver where the parties both stipulated to entry of an injunction and then one party waited a year before moving to dissolve the injunction for lack of a bond].)

Nor are we persuaded by defendants' broad argument that *Smith* should not be followed "because its reasoning is inconsistent with the mandatory language of [] section 529(a), as well as being inconsistent with [] *Neumann* [], *Griffin* [], and [] *ABBA*." Neither *Neumann* nor *Griffin* addresses forfeiture or waiver. (*Neumann, supra*, 146 Cal. 31; *Griffin, supra*, 124 Cal.App.2d at pp. 698–700.) We agree with the *Smith* court that *ABBA*, which also did not address forfeiture, stands only for "the narrow proposition that an appellate court will not *find as a matter of law* that a restrained party waives its statutory right to a bond by failing to affirmatively request it when neither the moving party nor the court has raised the topic prior to the trial court's ruling." (*Smith, supra*, 183 Cal.App.4th at p. 744.) An appellate court may not be *required* to find waiver in every case where an "injunction bond" is not mentioned in the trial court,

14

but here the record shows that defendants forfeited, and affirmatively waived, a bond.

### *DISPOSITION*

The order appointing a receiver to, among other things oversee the demolition of appellants' property is affirmed. Respondents are awarded their costs on appeal.

RUBIN, P.J.

WE CONCUR:

MOOR, J.

KIM, J.

15