Filed 2/15/24  P. v. Gregori CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff,<br><br>v.<br><br>GINA GREGORI et al.,<br><br>        Defendants.<br><br>BLAKE ALSBROOK, as Receiver, etc.,<br><br>        Movant and Respondent;<br><br><br>AVALON FUNDING CORPORATION<br><br>        Third Party Claimant and Appellant. | A164081<br><br>(San Francisco City & County Super. Ct. No. 17-008012) |

Avalon Funding Corporation (Avalon) appeals from a trial court order awarding fees to current and former receivers (collectively, "Receiver") appointed pursuant to Penal Code section 186.11 (section 186.11) to manage and preserve certain property and assets.  The receivership proceedings were pendent to a criminal action against Gina Gregori and her companies for insurance fraud.  (§ 186.11, subd. (d)(2).)  The People charged Gregori with failing to pay millions of dollars in workers' compensation insurance

premiums on behalf of the employees of her companies. The court established the receivership to preserve Gregori's assets for possible criminal fines and victim restitution.

One of the real properties in the receivership estate was located on Dolores Street in San Francisco and owned by Gregori's former romantic partner, Richard Bertero, with whom Gregori had commingled funds. Bertero used the Dolores Street property as collateral for a loan from Avalon. Later, Bertero filed for Chapter 11 bankruptcy; the Dolores Street property became part of the bankruptcy estate. The bankruptcy court released the Dolores Street property from the automatic bankruptcy stay to allow foreclosing lenders to sell it. When both Avalon and the Receiver made claims to the surplus proceeds from that sale, the trial court ordered the surplus turned over to it to resolve the priority of their claims. Relying on section 186.11, the court ordered that the bulk of the surplus be used to pay the Receiver's fees and expenses incurred in administering the receivership estate.

On appeal, Avalon argues that the Receiver had no valid claim to the surplus; that the court erred by applying section 186.11 rather than the nonjudicial foreclosure statute, Civil Code section 2924k; that the court lacked jurisdiction over the surplus; and that the court misapplied section 186.11. The Receiver argues that the trial court had jurisdiction over the surplus as part of the receivership estate and that the court properly exercised its discretion by finding that section 186.11 authorized it to pay the Receiver before paying Avalon.

We conclude that the trial court properly applied and interpreted section 186.11 and that Avalon has not otherwise shown that the court's actions were unlawful or an abuse of discretion. We therefore affirm.

2

# BACKGROUND

## I. Legal Background

Section 186.11, the "Freeze and Seize" statute, authorizes a trial court to appoint a receiver to preserve the assets of a criminal defendant subject to an "aggravated white collar crime enhancement" because the defendant was "charged with having committed two or more related felonies involving fraud . . ., a pattern of related felony conduct, and the taking of more than $100,000." (§ 186.11, subd. (a)(1), (d)(2), (e)(2); *People v. Shah* (2023) 96 Cal.App.5th 879, 887 (*Shah*); *People v. Stark* (2005) 131 Cal.App.4th 184, 203.) The court's goal in the pendent receivership proceedings is to prevent defendants from "dissipat[ing] or secreting [their] assets or property" while the criminal proceedings are pending, and then to use "those assets to pay restitution to victims if the People secure a conviction." (§ 186.11, subd. (d)(2); *Shah*, at p. 887.) A receiver may "take possession of, care for, manage, and operate the assets and properties so that the property may be maintained and preserved." (§ 186.11, subd. (e)(2).) "The court may order that a receiver appointed pursuant to [section 186.11] shall be compensated for all reasonable expenditures made or incurred by him or her in connection with the possession, care, management, and operation of any property or assets that are subject to [section 186.11]." (*Ibid*.) The statute was designed to "mak[e] it more difficult for someone convicted of an aggravated white collar crime to nevertheless benefit from their ill-gotten gains." (*Shah*, at p. 903.)

## II. Factual Background

Gregori was charged with multiple counts of worker's compensation insurance fraud and associated thefts. The complaint alleged the white-collar criminal enhancement pursuant to section 186.11 and named as criminal

3

defendants several of Gregori's companies, including Apex Janitorial Solutions (Apex).

The People moved for appointment of a receiver to manage and preserve Gregori's assets pursuant to section 186.11. The court granted the motion and issued an order appointing the Receiver, identifying the assets subject to the receivership, and specifying the Receiver's powers. Among other things, the Receiver was authorized to take possession of, collect income from, and otherwise operate, manage, preserve, and control Gregori's properties. The order also authorized the Receiver to request court approval and confirmation of all fees and expenses incurred by the receivership in executing its duties. The court "reserve[d] jurisdiction to allocate the receivership costs of administration as between the parties."

Starting in August 2017, the Receiver managed Apex's finances. In so doing, the Receiver learned that Avalon was lending money to Apex—referred to as a "factoring" agreement—to fund its operations. Avalon also was involved in a financial exchange with Bertero and Apex whereby Bertero used the Dolores Street property as collateral to pay Gregori's $500,000 bail while Avalon obtained a lien against the property. The Receiver later moved to dissolve Apex as insolvent, noting that both the Receiver and Avalon were making claims against Apex's assets and there was evidence that Gregori was funneling Apex's business to a newly incorporated entity.

After the People provided evidence that Gregori was commingling her and Apex's funds with Bertero, the court issued a second receivership order, dated March 7, 2018. The second order expanded the property subject to the receivership to include, among other things, the Dolores Street property.

In June 2020, Bertero filed for bankruptcy. The district attorney became aware of the filing in July 2020 through an email from a bankruptcy

4

creditor who planned to foreclose on the Dolores Street property. When the Receiver learned of Bertero's bankruptcy filing, he contacted Bertero's bankruptcy counsel to address the Receiver's obligations pursuant to 11 U.S.C. section 543 to turn the property over to the bankruptcy estate. Creditors in the bankruptcy case then moved for relief from the automatic bankruptcy stay, which the court granted.

The nonjudicial foreclosure sale of the Dolores Street property resulted in surplus proceeds. Having received notice of the surplus from the foreclosure trustee, Avalon responded with a claim to the surplus. The Receiver contacted the foreclosure trustee to discuss the status of the receivership interest in the Dolores Street property and to request turnover of the surplus to the receivership court. Given Avalon's and the Receiver's competing claims to the surplus, the trustee agreed to turn over the surplus upon order of the receivership court. Meanwhile, on May 26, 2021, the bankruptcy case was dismissed.

The Receiver filed an ex parte application in the trial court on June 4, 2021, asking the foreclosure trustee to turn over the surplus to the receivership court. The court granted the Receiver's application, ordered the foreclosure trustee to turn the surplus over immediately, and directed the Receiver to "prepare and file a motion for final determination of ownership of the [surplus]."

## III. The Trial Court's Order

With the surplus in the custody of the receivership, the Receiver moved the trial court to determine the priority of its and Avalon's claims to the surplus. The Receiver requested disbursement of roughly $148,000 in fees for his services, relying on section 186.11, subdivision (i) to argue that he was entitled to first priority to the surplus. The trial court rejected the Receiver's

argument under subdivision (i), but concluded that it was appropriate to award the Receiver fees pursuant to subdivision (e)(2). The court rejected Avalon's further arguments and objections.

## DISCUSSION

### I. Standard of Review

We review matters of law, including statutory construction, de novo. (*Shah*, *supra*, 96 Cal.App.5th at p. 894.) "However, '[m]ost matters related to receiverships rest in the sound discretion of the trial court' and will not be disturbed on appeal absent an abuse of that discretion." (*County of Sonoma v. Quail* (2020) 56 Cal.App.5th 657, 671 (*Quail*), as mod. on den. of rehg., Oct. 28, 2020.) " 'Such deference is the rule, even where the court confirms extraordinary action by the receiver . . . .' " (*Ibid.*)

### II. Analysis

Avalon advances several arguments on appeal. Primarily, Avalon argues that the court erred by applying section 186.11, rather than Civil Code section 2924k, to distribute the surplus, and that even if section 186.11 properly applies, subdivision (i) did not authorize the court to prioritize the Receiver's claim to the surplus. Relatedly, Avalon challenges the validity of the Receiver's claim to the surplus because the Receiver never operated or managed the Dolores Street property, and instead "lost" it to foreclosure. Avalon also contends for various reasons that the Receiver had no interest in the surplus that survived the bankruptcy case and/or the nonjudicial foreclosure of the Dolores Street property.

#### A. The Trial Court Was Not Required to Apply the Claim Priorities in Civil Code Section 2924k

Avalon argues that, because the foreclosure sale of the Dolores Street property took place pursuant to Civil Code section 2924 et seq., the trial court

6

should have applied the claim priorities in Civil Code section 2924k to disburse the surplus it generated.  We disagree.

First and foremost, Civil Code section 2924k by its own terms applies only to a distribution made by the foreclosure trustee or a court clerk pursuant to Civil Code section 2924j, subdivision (d).  (See Civ. Code § 2924k, subd. (a); *Placer Foreclosure, Inc. v. Aflalo* (2018) 23 Cal.App.5th 1109, 1114 [Civil Code section 2924 et seq. governs foreclosure trustee's duties in foreclosure sale].)  Here, however, the surplus was turned over to the receivership court for distribution.  Because the receivership court, rather than the foreclosure trustee or a court clerk following a proceeding pursuant to section 2924j, subdivision (d), was responsible for the distribution of the surplus, the claim priorities set forth in section 2924k do not apply.

Even under Civil Code section 2924k and related statutes governing nonjudicial foreclosures, the priorities set forth therein do not necessarily control.  Subdivision (b) of Civil Code section 2924j specifies that "[n]othing in this section shall preclude any person from pursuing other remedies or claims as to surplus proceeds."  (Civ. Code § 2924j, subd. (b).)  What Avalon characterizes as the "exclusive" statutory scheme therefore did *not* preclude the Receiver from seeking reimbursement and the trial court from granting relief pursuant to section 186.11.  For the same reasons, we reject Avalon's arguments that the trial court's application of section 186.11 "invalidated" the nonjudicial foreclosure sale and its consequences or somehow undermined the "conclusive presumption of regularity" afforded a nonjudicial foreclosure sale.

The trial court did not abuse its discretion in declining to adhere to the claim priorities in Civil Code section 2924k.

**B. The Trial Court Properly Applied Section 186.11**

The trial court's interpretation of section 186.11 to permit compensation to the Receiver was not an abuse of discretion or contrary to law. The court reviewed the plain language of section 186.11, harmonized the language of the statute to give force and effect to its distinct provisions, and interpreted it to further the policy interests embodied therein. (See *Shah*, *supra*, 96 Cal.App.5th at pp. 895, 898–903.) Avalon offers no alternative construction of section 186.11.

Instead, Avalon primarily argues that the Receiver was not entitled to "preservation" expenses under section 186.11, subdivision (e)(2), because the Receiver provided no benefit to the Dolores Street property, the source of the surplus funds. But as the trial court explained, the receiver fees contemplated by subdivision (e)(2) are not tied to any particular source of funds, unlike subdivision (i) of section 186.11. The trial court reasoned that section 186.11 "describes two distinct categories of receivership expenditures. The first category [is] set forth in [section] 186.11[, subdivision] (e)(2), and consists of 'all reasonable expenditures made or incurred by [the receiver] in connection with the possession, care, management and operation of any property or assets that are subject to the provisions of this section.' The second category, found in [section] 186.11(i)(1), consists of 'all reasonable expenditures made or incurred by [the receiver] in connection with the sale of the property, or liquidation of assets . . . .' The two categories are not the same; the first relates to the possession, care and management of property and assets . . ., and the second relates to their sale and liquidation . . . . [O]nly the second category is tethered to a specified source of funds: proceeds from the liquidation of property and assets levied upon following a qualifying felony conviction under [section] 186.11[, subdivision] (h)(1)(A). The first

8

category—which is necessarily the category at issue here, because there has been neither a conviction nor a levy . . . —has no identified source for their payment."

The court concluded that there must be some source of funds for expenses awarded to the Receiver pursuant to section 186.11, subdivision (e)(2), because otherwise a receiver's right to compensation under that section would be "wholly illusory."  Noting the two distinct categories of funding for receivership expenses established by section 186.11, subdivisions (e)(2) and (i), the court explained that funds awarded pursuant to subdivision (e)(2), unlike subdivision (i), are not tied by statutory language to the liquidation of receivership assets and cannot reasonably be interpreted as contingent upon their liquidation.  Otherwise, "a receiver . . . would have no right to compensation for any expenditures incurred in connection with performing standard receiver functions and services like gathering, caring for, operating, protecting, and managing assets—potentially for many years—unless and until the prosecuting agency secured a qualifying felony conviction of the defendant."  Without a more immediate source of funding, the court noted, "it would be difficult, if not impossible, to retain a receiver to perform the necessary services identified in [section] 186.11[, subdivision] (e)(2)."

In addition, the court explained, this interpretation is "consistent with well-settled law that receivership expenses are typically paid out of property and funds coming into the hands of the receiver, and in keeping with the broad discretion of trial courts to give priority to the payment of receivers' fees and expenses."

We see no error in the trial court's reasoning, which establishes that the payment of preservation expenses under section 186.11, subdivision (e)(2)

9

is not contingent upon the Receiver's management of or benefit to the Dolores Street property. Instead, "[t]he court may order that a receiver . . . be compensated for *all* reasonable expenditures . . . incurred . . . in connection with the possession, care, management, and operation of *any* property or assets" subject to section 186.11. (§ 186.11, subd. (e)(2), italics added.)

Avalon's citation to *City of Chula Vista v. Gutierrez* (2012) 207 Cal.App.4th 681, 686–687 (*City of Chula Vista*) does not support its argument that the trial court abused its discretion by relying on section 186.11(e)(2) to compensate the Receiver here. In *City of Chula Vista*, the receiver sought reimbursement of expenses from a foreclosing lender for services it rendered before the lender foreclosed on the receivership real property. (*Id.* at pp. 684–685.) The trial court determined that the receiver was not entitled to those expenses directly from the lender, which the trial court specifically exempted from the receivership at the time the expenses were incurred. (*Id.* at p. 685.) On appeal, the receiver argued that the trial court abused its discretion by denying its request for expenses because the lender was unjustly enriched at the receiver's expense. (*Id.* at p. 686.) The court of appeal affirmed, finding that the trial court's denial of the receiver's request for reimbursement from the lender was supported by the record and the receiver had not shown that the lender benefited from its services. (*Id.* at pp. 686–687.)

*City of Chula Vista* is inapposite. That court was not interpreting or applying section 186.11, subdivision (e)(2), which authorizes the trial court to compensate the receiver from funds in the receivership estate. In addition, as the Receiver argues, in *City of Sierra Madre v. SunTrust Mortgage, Inc.* (2019) 32 Cal.App.5th 648, 659, the court concluded that the issue of whether

10

the lender in *City of Chula Vista* benefited from the receiver's services is not relevant to a court's authority to grant a receiver's lien priority status.

Avalon also argues that, in awarding expenses to the Receiver, the trial court could not rely on equitable principles that are inconsistent with positive statutory law, i.e., Civil Code section 2924k. But the trial court relied on these principles, as articulated in *Quail* and similar cases, merely to confirm that its exercise of explicit statutory authority granted it pursuant to section 186.11 was generally "in keeping with the broad discretion of trial courts to give priority to the payment of receivers' fees and expenses." As the trial court noted, the statutory scheme would not otherwise function, because a receiver might not be paid for its services for years, if at all.

In the trial court, the Receiver relied on section 186.11, subdivision (i) as the source of the trial court's authority to prioritize receivership funds. The Receiver continues to argue on appeal that the trial court's order was authorized pursuant to subdivision (i) of section 186.11. But as the trial court correctly explained, subdivision (i), by its plain terms, does not apply to the Receiver's fees here because the Receiver did not "liquidate" the Dolores Street property. (See § 186.11, subd. (i).) Subdivision (i) does, however, provide general support for the notion that a court interpreting section 186.11 may, within its discretion, draw upon the well-established rule of prioritizing receivership costs over other liens. (See *Quail*, *supra*, 55 Cal.App.5th at pp. 672–675.) Section 186.11, subdivision (i)(1) places receivership expenses at the top of the priority list for disbursement pursuant to that subdivision.

### C. Avalon's Remaining Arguments

Avalon argues that, because the Receiver stood "in the shoes of" Bertero with respect to the Dolores Street property, and Bertero ceased to

11

have an interest in the property once the property was sold, the Receiver also had no cognizable interest in the property. Avalon's authorities, however, stand for general propositions applicable to receiverships and property law; none applies to the specific facts and law at issue here. (See *Shah*, *supra*, 96 Cal.App.5th at p. 894, fn. 5 [" 'Mere suggestions of error without supporting argument or authority other than general abstract principles do not properly present grounds for appellate review' "]; see also *Quail*, *supra*, 55 Cal.App.5th at p. 675 [rejecting general argument that, because a receiver takes a property " ' "subject to all lien's and equities," ' " the trial court's authority to prioritize receiver expenses is limited].) And the Receiver's claim to the surplus was not premised on or derivative of Bertero's residual interest in the Dolores Street property and did not unlawfully "enlarge" any interest in the property. The Receiver brought an independent statutory claim for reimbursement of fees he expended in administering the larger estate.

Avalon also claims that the trial court's order is invalid because the Receiver's demand to the foreclosure trustee violated the bankruptcy stay and was therefore void. But at the time that the Receiver contacted the foreclosure trustee, the stay had been lifted as to the Dolores Street property in order to allow the foreclosure sale to proceed. Avalon itself, after invitation by the foreclosure trustee, made a claim to the surplus. And the Receiver's motion requesting fees was filed after Bertero's bankruptcy case was dismissed. Avalon's citations to authority stating generally that violations of the automatic stay are void have no bearing where Avalon has not shown that a violation of the stay occurred.

Avalon makes an equitable argument that the receivership benefitted from Gregori's factoring arrangement with Avalon because the receivership estate received advances of more than $3 million on behalf of Apex. The

Receiver should not be unjustly enriched, argues Avalon, by benefiting from the factoring arrangement but not bearing the burden of Avalon's claims. But that argument tells only one side of the story: Avalon undoubtedly profited from the continued operation of the factoring agreement and indeed, the Receivership sought to dissolve Apex in part because the costs of continuing its operations subject to the factoring agreement with Avalon rendered Apex insolvent. In any event, the receivership as such did not benefit from Avalon's factoring agreement with Apex. Rather, the receivership's interest was to maintain Apex as a viable business to pay any fines or restitution arising from the criminal proceedings; it did not draw on Avalon's funds to benefit the Receiver.

Finally, Avalon argues that the Receiver could not claim an interest in the surplus because the Dolores Street property was not traceable to criminal conduct. But the trial court added the Dolores Street property to the receivership estate in March 2018, relying on evidence that Gregori and Bertero had commingled funds, including with respect to receivership assets. The March 2018 order was not appealed, and the time for appeal has long since passed.

## DISPOSITION

The judgment is affirmed. The Receiver is entitled to recover his costs on appeal.

GOLDMAN, J.

WE CONCUR:

BROWN, P. J.
STREETER, J.