[No. D059364. Fourth Dist., Div. One. June 4, 2012.]

CITY OF CHULA VISTA, Plaintiff, v.
MARIA E. GUTIERREZ, Defendant;
MARK S. ADAMS, Claimant and Appellant;
WACHOVIA MORTGAGE, Objector and Respondent.

## COUNSEL

California Receivership Group and Andrew F. Adams for Claimant and Appellant.

Anglin Flewelling Rasmussen Campbell & Trytten, Frederick J. Hickman and Robert C. Little for Objector and Respondent.

## OPINION

**McINTYRE, J.**—Mark S. Adams, a court-appointed receiver, appeals from an order awarding him a portion of the compensation he requested for his services. On appeal, Adams contends (1) the court abused its discretion in refusing to order Wachovia Mortgage (Wachovia) to pay all receivership fees because Wachovia was unjustly enriched, and (2) Wachovia is responsible for receivership fees under Health and Safety Code section 17980.7 (section 17980.7). (Undesignated statutory references are to the Health and Safety Code.) We reject Adams's arguments, and affirm.

Wachovia has filed an unopposed request for judicial notice, requesting that we take judicial notice of the legislative history of section 17980.7. We grant Wachovia's request.

### FACTUAL AND PROCEDURAL BACKGROUND

Maria E. Gutierrez owned a four-unit residential building in the City of Chula Vista (the City). In 2006, Gutierrez borrowed $440,000 from World Savings Bank, which was secured by a first deed of trust on the property. World Savings Bank eventually became Wachovia. Gutierrez defaulted on the loan, causing the lender to record a notice of default in February 2008.

In April 2008, the City began conducting inspections and notified Gutierrez of multiple violations concerning the condition of the property. Gutierrez, however, was in prison in Washington. Thus, in November 2008, the City filed a petition seeking to have a receiver appointed under section 17980.7 for the purpose of correcting the problems and operating the building. The court appointed California Receivership Group (CRG) as the receiver. It appears that Adams, CRG's president, performed the receiver's duties as he is identified in multiple reports and court documents as the receiver. The court's order of December 2008 appointing the receiver stated that it was not applicable to Wachovia.

The property was boarded up within two days of the receiver's appointment and within three weeks, the families living at the property were relocated. In January 2009, Adams informed the court that he "believe[d] that the lender w[ould] foreclose and be responsible for rehabilitating [the property] prior to resale. That being the case, [Adams] also believe[d] that th[e] receivership c[ould] be closed out within 2 months time."

In February 2009, in response to Adams's request for a receivership certificate that would be superior to Wachovia's deed of trust, the court authorized Adams to file a secondary lien against the property for his fees and costs. There is nothing in the record indicating that this lien was perfected or recorded against the property. In July 2010, Wachovia took ownership of the property through a $330,424 credit bid at the foreclosure sale, and in October 2010, it conveyed the property to a third party.

In November 2010, nearly two years after he was appointed, Adams filed his final report requesting a receiver's certificate lien in the amount of $41,545.72 against the property. After determining that Wachovia conveyed the property to a third party, Adams changed his request to seek direct payment from Wachovia and reduced the amount to $37,541.72. The court denied Adams's request and stated that although it found "it would be appropriate to charge Wachovia for the receiver's expenses during the time period that Wachovia owned the property[,] July 8 through October 28, 2010[,] the only expense incurred during that time period [was] $408.33 to review the file. Given that the tenants were no longer on the property, the property had been foreclosed on, and the receiver was well-acquainted with the facts the court [was] not persuaded this was an appropriate expense to charge Wachovia." Despite this statement, in its final order discharging the receiver, the court ordered Wachovia to pay Adams the sum of $408.33.

## DISCUSSION

### I.  Alleged Unjust Enrichment

#### A.  General Legal Principles

■  A receiver is an agent and officer of the court, and is under the control and supervision of the court. (Code Civ. Proc., § 568; Cal. Rules of Court, rule 3.1179.) The receiver is also a fiduciary who must act for the benefit of all parties interested in the property. (*Shannon v. Superior Court* (1990) 217 Cal.App.3d 986, 992 [266 Cal.Rptr. 242].)

■  Receivers are entitled to compensation for their own services and the services performed by their attorneys. (*Venza v. Venza* (1951) 101 Cal.App.2d 678, 680 [226 P.2d 60].) Generally, the costs of a receivership are paid from the property in the receivership estate. (See *Andrade v. Andrade* (1932) 216 Cal. 108, 110 [13 P.2d 676]; *McCarthy v. Poulsen* (1985) 173 Cal.App.3d 1212, 1219–1220, fn. 3 [219 Cal.Rptr. 375].) However, courts may also

impose the receiver costs on a party who sought the appointment of the receiver or " 'apportion them among the parties, depending upon circumstances.' " (*Baldwin v. Baldwin* (1947) 82 Cal.App.2d 851, 856 [187 P.2d 429].) Courts are vested with broad discretion in determining who is to pay the expenses of a receivership, and the court's determination must be upheld in the absence of a clear showing of an abuse of discretion. (*Ibid.*; see *Melikian v. Aquila, Ltd.* (1998) 63 Cal.App.4th 1364, 1368 [74 Cal.Rptr.2d 739]; *People v. Riverside University* (1973) 35 Cal.App.3d 572, 587 [111 Cal.Rptr. 68].)

B. *Analysis*

Adams contends the court abused its discretion in refusing to order Wachovia to pay all receivership costs because Wachovia was unjustly enriched by his services. We disagree.

■ "An individual is required to make restitution if he or she is unjustly enriched at the expense of another." (*First Nationwide Savings v. Perry* (1992) 11 Cal.App.4th 1657, 1662 [15 Cal.Rptr.2d 173].) "The recipient of the benefit is liable only if the circumstances are such that, as between the two persons, it is unjust for the recipient to retain it." (*California Federal Bank v. Matreyek* (1992) 8 Cal.App.4th 125, 131 [10 Cal.Rptr.2d 58].)

■ A court may require one or more parties to pay for receiver fees where the property subject to the receivership is inadequate to compensate the receiver and/or where other equitable circumstances support imposing fees on a party. (*Stanton v. Pratt* (1941) 18 Cal.2d 599, 603 [116 P.2d 609]; *Baldwin v. Baldwin, supra*, 82 Cal.App.2d at p. 856.) In considering the appropriate source for the compensation, a relevant factor is whether the party to be charged obtained a benefit from the receiver's services. (See *Stanton*, at p. 603.)

Here, the trial court found that Wachovia should not personally bear the costs of the receiver's services. Adams relies primarily on *Ephraim v. Pacific Bank* (1900) 129 Cal. 589 [62 P. 177] (*Ephraim*) to assert that it is unjust for a foreclosing bank to retain the value of a receivership without paying the receiver's costs. His reliance on *Ephraim* is misplaced. In that case, the court concluded that the receiver could seek his fees from "the parties at whose request he had incurred the expenses." (*Id.* at p. 594.) In this case, Wachovia did not seek appointment of the receiver or create the situation that required the receivership; rather, it was the City that initiated the proceedings to cure the dilapidated condition of the property. Further, Wachovia only owned the property for less than four months out of the two-year receivership period, and the majority of Adams's work was performed before Wachovia's ownership.

■ We are unable to discern from the record what, if any, monetary benefit Adams's services conferred directly on Wachovia. Adams relocated two tenants, boarded up and secured the property, and performed minor landscaping, including mowing the grass and pulling weeds. Thereafter, it appears that Wachovia sustained a financial loss as a result of the foreclosure proceedings and sale to a third party. Further, as Adams informed the court in early 2009, he did not rehabilitate the property because he believed it would be expensive and this was the responsibility of the lender upon foreclosure. Thus, Adams's role was limited to leaving the property "vacant and secured."

Without any citation to authority, Adams argues that because Wachovia paid $11,000 to satisfy liens incurred when Gutierrez owned the property and $6,000 for liens incurred in October 2010, Wachovia admitted that it was responsible for and benefited from the receiver's services. Wachovia asserts that the liens were satisfied in order to clear the property's title for sale to a third party. We are not convinced that Wachovia's satisfaction of the liens suggests anything in regard to whether Wachovia should be held directly responsible for the receiver's fees.

Thus, on this record, we cannot conclude that the trial court abused its discretion in refusing to make Wachovia responsible for Adams's fees and costs. In reaching this conclusion, we express no opinion regarding whether Adams could have recovered from the City through principles of unjust enrichment or otherwise.

## II. *Section 17980.7*

■ Upon request of an enforcement agency, tenant, or tenant association or organization, the court may appoint a receiver for a substandard building where the owner failed to correct cited violations that are "so extensive and of such a nature that the health and safety of residents or the public is substantially endangered." (§ 17980.6; see § 17980.7, subd. (c).) The receiver has the power "[t]o borrow funds to pay for repairs necessary to correct the conditions cited in the notice of violation and to borrow funds to pay for any relocation benefits authorized by [this section] and, with court approval, secure that debt and any moneys owed to the receiver for services performed pursuant to this section with a lien on the real property upon which the substandard building is located. The lien shall be recorded in the county recorder's office in the county within which the building is located." (§ 17980.7, subd. (c)(4)(G).) "The receiver shall be entitled to the same fees, commissions, and necessary expenses as receivers in actions to foreclose mortgages." (§ 17980.7, subd. (c)(5).)

Adams contends Wachovia was directly responsible for receivership fees because it was an "owner" of the property for purposes of section 17980.7. In making this assertion, Adams relies on section 17980.7's definition of an "owner," which states that "[t]he term 'owner,' . . . shall include the owner, including any public entity that owns residential real property, at the time of the initial notice or order and *any successor in interest who had actual or constructive knowledge of the notice, order, or prosecution.*" (§ 17980.7, subd. (f), italics added.) Wachovia acknowledges that it "became a temporary 'successor in interest' to Gutierrez when it took her title through foreclosure," but argues that section 17980.7 does not mandate direct liability for the receiver's expenses.

■ In considering these arguments, our fundamental objective is to ascertain the legislative intent of section 17980.7. In so doing, we focus initially on the words of the statute " ' " 'because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context.' [Citation.] If the statutory language is unambiguous, 'we presume the Legislature meant what it said, and the plain meaning of the statute governs.' " ' [Citation.]" (*San Diego County Employees Retirement Assn. v. County of San Diego* (2007) 151 Cal.App.4th 1163, 1174 [60 Cal.Rptr.3d 601].) If the language of the statute does not provide a definitive answer, then we look to extrinsic sources, including the legislative history. (*Ibid.*)

We find nothing in the statute or its legislative history to suggest that it was intended to impose direct liability for a receiver's fees and costs on a foreclosing lender that ultimately acquires the property. To the contrary, the statute specifically states that a receiver can, with court approval, obtain a lien on the real property upon which the substandard building is located. (§ 17980.7, subd. (c)(4)(G).) This is exactly what the trial court in this case authorized Adams to do and, for reasons unknown to us, it appears that it was never done. If the Legislature had intended to impose direct liability or provide the receiver with a priority lien, it would have done so, just as it allowed the court to directly "[o]rder the owner to pay all reasonable and actual costs of the enforcement agency . . . ." (§ 17980.7, subd. (d)(1).)

■ Simply put, section 17980.7 does not in and of itself allow for the receiver to recover his expenses directly from the owner; rather recovery should be through a lien on the property. Any change in the law must come from the Legislature, not the courts.

## DISPOSITION

The order is affirmed. Wachovia is entitled to costs on appeal.

Huffman, Acting P. J., and O'Rourke, J., concurred.