Filed 9/14/20  City of Norco v. Rodriguez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| CITY OF NORCO et al., | |
| Plaintiffs and Respondents, | E071911 |
| v. | (Super.Ct.No. RIC1709081) |
| MARTIN RODRIGUEZ, | OPINION |
| Defendant and Appellant; | |
| CALIFORNIA RECEIVERSHIP GROUP, PBC, as Receiver, etc., | |
| Respondent. | |

APPEAL from the Superior Court of Riverside County.  Sunshine S. Sykes, Judge.  Affirmed.

Baker Law Group and John H. Baker, for Defendant and Appellant Martin Rodriguez.

Harper & Burns and John R Harper, for Plaintiffs and Respondents City of Norco et al.

1

California Receivership Group, Thomas A. Yatteau, and Mark S. Adams, for Respondent California Receivership Group, PBC.

Defendant and appellant Martin Rodriguez appeals from the trial court's order finding him personally liable for $48,000 in expenses stemming from a receivership. Finding no abuse of discretion, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

In 2005, Rodriguez applied for a residential building permit from plaintiff and respondent City of Norco (the City). He received the permit in 2008, and the permit expired in 2014. In 2015 and May 2016, the City inspected a partially constructed residence Rodriguez built on his property—the residence was never completed—and issued citations for state and local building code violations.

In August 2016, the City issued Rodriguez—who is not a licensed contractor— another residential building permit for the same property. When that permit expired in February 2017, the City again inspected the property and, according to a later court filing the City submitted, "red tagged the partially constructed residence . . . as unsafe and dangerous because of numerous health and safety violations." The City noted dozens of violations of state and local laws and concluded that the property was "uninhabitable, dangerous, and an immediate detriment to public safety."[1] The City issued a "Notice and

_____

[1] The violations included lack of heating and electrical lighting; infestation of insects, vermin, or rodents; lack of connection to a sewage system; insufficient vertical supports; unsafe and substandard wiring, plumbing, and vents; and faulty weather protection.

Order to Repair or Abate" and, after a month had passed with no remediations made, initiated this action and sought the appointment of a receiver, which the trial court granted.

The receiver, respondent California Receivership Group, PBC (Receiver), removed Rodriguez and his family, who had been living in two recreational vehicles on the property and using an unpermitted outhouse, from the property. The Receiver recommended that the unfinished house be demolished. Although there were initial concerns that an older, completed residential structure on the same property crossed over onto an adjacent parcel—which would mean that both houses would need to be demolished if the parcels ended up with different owners—a boundary survey later revealed that the older house was located entirely on Rodriguez's parcel. The Receiver also recommended that the outhouse, along with some storage sheds, be demolished as well. Although the family was allowed to remove its personal property in November 2017, by early 2018, items such as building materials, cabinets, furniture, and inoperable vehicles still remained on the property. As the Receiver later informed the trial court, "[t]his led to increased on-site security costs to ensure the valuables were not stolen, increased [Receiver] time to have a low-level employee on-site, [and] increased construction costs to ultimately remove these items."

Most of the structures were demolished on February 28, 2018, and the property, which still included the older, finished house, was ultimately sold for $275,000. The Receiver then filed a motion for discharge; in it, the Receiver stated that sale proceeds

3

were insufficient to cover remaining costs, estimated that there remained "approximately $48,000 in unpaid City and receivership fees and costs," and requested an order holding Rodriguez personally liable for that amount.  The trial court discharged the Receiver and found Rodriguez personally liable for the $48,000.

## II.  ANALYSIS

"It has long been recognized that a receiver is an agent and officer of the appointing court.  [Citations.]  As an officer of the court, a receiver is not an agent of any particular party to the action, but represents all persons interested in the property.  [Citation.]  Property in receivership remains under the court's control and continuous supervision, and the importance of such supervision cannot be overstated.  [Citation.]"  (*City of Santa Monica v. Gonzalez* (2008) 43 Cal.4th 905, 930 (*Santa Monica*).)

"Receivers are entitled to compensation for their own services and the services performed by their attorneys.  [Citation.]  Generally, the costs of a receivership are paid from the property in the receivership estate.  [Citations.]  However, courts may also impose the receiver costs on a party who sought the appointment of a receiver or "'apportion them among the parties, depending upon circumstances.'"  [Citation.]  Courts are vested with broad discretion in determining who is to pay the expenses of a receivership, and the court's determination must be upheld in the absence of a clear showing of an abuse of discretion.  [Citations.]"  (*City of Chula Vista v. Gutierrez* (2012) 207 Cal.App.4th 681, 685-686 (*Chula Vista*).)

4

Rodriguez first contends that the appropriate standard of review is de novo because, he asserts, the "operable facts of this case are not disputed" and because a review of the bills "requires an interpretation of rules." Not so. For one, the fact that some interpretation of legal rules may be involved does not turn the standard of review into a de novo one, as such a rule would make the standard of review in virtually every case de novo. Moreover, Rodriguez disputes numerous operable facts here. He contends, for example, that reversal is required because the Receiver "grossly mismanaged its assets," and he characterizes the Receiver's fees as "excessive." Even unimportant details are contested, such as his characterization that the unfinished and demolished house, shown in the footnote below, was a "two-story home with an attic" as opposed to a three-story home exceeding the scope of his permits.[2]

---

[2]



5

In any event, "[i]t is settled that fees awarded to receivers are in the sound discretion of the trial court and in the absence of a clear showing of an abuse of discretion, a reviewing court is not justified in setting aside an order fixing fees." (*People v. Riverside University* (1973) 35 Cal.App.3d 572, 587.)  Accordingly, we review for an abuse of discretion here.

On the merits, Rodriguez contends that the Receiver failed to act neutrally because it never obtained an expert opinion on whether the house needed to be demolished.[3]  The lack of an expert opinion here, however, does not mean the trial court abused its discretion in approving the demolition, as the City itself "red tagged" the building as "unsafe and dangerous" and characterized it as "an immediate detriment to public safety."  This, coupled with the undisputed fact that the wooden frame of the house had been exposed to the weather for eight years, is enough to support the trial court's discretion here, even though a contractor hired by Rodriguez opined that the building was structurally sound.  This is because "'[w]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.'"  (*Walker v. Superior Court* (1991) 53 Cal.3d 257, 272.)

Rodriguez also asserts that the Receiver did not act neutrally because it "misled the court by falsely saying that the foundation had never been inspected when in fact it

---

[3]  Although Rodriguez does not directly contend on appeal that the house should not have been demolished—a result we cannot undo—we consider the question as indirectly bearing on whether the Receiver's expenses, such as demolition costs, were reasonable.

had been both inspected and approved." This is an incomplete characterization of the record. An earlier report from the Receiver stated that the house's foundation had never been inspected, but in a later report filed a month before demolition, the Receiver both corrected the record and noted the parties' agreement that the foundation would not be demolished. Rodriguez fails to demonstrate either how the first statement was anything more than an inadvertent oversight on the Receiver's part or how this could have affected the trial court's decisions. As such, we have no basis to conclude that the Receiver was improperly biased or that, even if it were, that the trial court's decision to approve demolition (which, by stipulation, did not include the foundation) was tainted as a result.

Rodriguez next contends that he should not have to pay for the Receivership's fees because he did not receive any benefit from it. To support this, Rodriguez cites *Chula Vista*, where the Court of Appeal stated that "[i]n considering the appropriate source for the compensation [of receivership fees], a relevant factor is whether the party to be charged obtained a benefit from the receiver's services." (*Chula Vista*, *supra*, 207 Cal.App.4th at p. 686.) The receipt of a benefit is only one, nonexclusive factor to consider, however, and nothing in *Chula Vista* stands for the proposition that the lack of a direct benefit can preclude personal liability. To the contrary, the Health and Safety Code provision addressing the appointment of a receiver in circumstances such as these authorizes expense recovery from the property owner so long as the receiver makes a request and the court grants it. (See Health & Saf. Code, § 17980.7, subd. (c)(15) ["Upon the request of a receiver, a court may require the owner of the property to pay all

7

unrecovered costs associated with the receivership in addition to any other remedy authorized by law"].)  This especially makes sense where, as here, Rodriguez's delay in removing his personal property caused the Receiver to incur additional expenses.

Rodriguez argues that reversal is required because the Receiver "grossly mismanaged its assets."  In support, Rodriguez notes that a September 2017 report from the Receiver stated that $136,100 was the "maximum amount[] anticipated" for the demolition, even though the total expenses ultimately approximated $253,000.  The fact that actual costs ended up being significantly higher than estimated costs, though, is hardly shocking for a project of this size, and it does not by itself show that the Receiver mismanaged its assets.  Moreover, the only specific example Rodriguez raises of a line item disparity is for one we have already addressed.  Rodriguez states that "there is no explanation given for the security costs rising an exorbitant amount—from $700 per week in September-November of 2017 to four times that—amounting to $2,800 per week from mid-December to early March."  Far from there being no explanation, however, in its motion for discharge, the Receiver specifically stated that Rodriguez's failure to remove his personal property in November 2017 "led to increased on-site security costs to ensure the valuables were not stolen, increased [Receiver] time to have a low-level employee on-site, [and] increased construction costs to ultimately remove these items."  With Rodriguez raising no other concerns about the cost of any other specific items, we find that the Receiver did not mismanage the estate's assets.

Rodriguez's final argument is that the Receiver should not be reimbursed for secretarial, clerical, or administrative expenses. Variously relying on a Probate Code section addressing what an executor's attorney may bill for, federal guidelines on what attorneys in large bankruptcy cases may bill for, United States Tax Court memorandum opinions addressing attorneys' fees, and cases from other states, Rodriguez urges this court to disallow various line items of these expenses. We find these authorities inapposite. For one, all of the authorities other than the out of state cases concern what an attorney may charge for legal services, and so do not purport to apply to what someone occupying another role (such as receiver) may bill for. As we have stated, "[r]eceivers are entitled to compensation *for their own services* and the services performed by their attorneys." (*Chula Vista*, *supra*, 207 Cal.App.4th at p. 685, italics added.) Moreover, the out of state cases stand only for the proposition that "payments made by [a] trustee to bookkeepers, accountants or lawyers for [keeping his books] cannot be allowed as items of discharge in his account." (*Hagedorn v. Arens* (1930) 106 N.J. Eq. 377, 383.) Not only does Rodriguez fail to even attempt to show that this is (or should be) currently the rule in California, such a rule also has no applicability where, as here, Rodriguez does not demonstrate that the Receiver paid third parties to keep its books. We therefore find no abuse of discretion in the trial court's approval of the Receiver's expenses.

9

In sum, Rodriguez has not demonstrated that the Receiver acted improperly or that reimbursement of its expenses, including from Rodriguez personally, was an abuse of discretion.

## III.  DISPOSITION

The order is affirmed.  Respondents are awarded their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL            
J.

We concur:

RAMIREZ            
P. J.

MCKINSTER          
J.