Filed 6/11/26

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| COUNTY OF DEL NORTE,<br><br>    Plaintiff and Respondent,<br>v.<br>DARLA BRITT et al.,<br><br>    Defendants and Appellants. | A173145<br><br>(Del Norte County<br>Super. Ct. No. CV231278) |

    This appeal arises from a receivership proceeding filed by the County of Del Norte to abate nuisances and remedy violations of the State Housing Law (Health & Saf. Code, § 17910 et seq.),[1] which arose on a property formerly owned by Robert D. Kurtz after Kurtz died intestate. The County's petition named as defendants "Estate of Robert D. Kurtz" and "Successor[s] in Interest, Sheryl Allsop and Darla Britt," who were Kurtz's sisters and are appellants here (the sisters). The trial court appointed a receiver pursuant to section 17980.7, subdivision (c) (section 17980.7(c)) to take control of the property, remedy the code violations and abate the nuisances, and arrange for the property's sale. After the receiver completed this work, it asked the court to approve its final accounting and discharge it, submitting a proposed

---

    * Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of Part I of the Discussion.

    [1] Undesignated statutory citations are to the Health and Safety Code.

order that would have imposed liability on the estate and the sisters for certain expenses of the receiver and the County. The trial court declined to hold the sisters liable, opining that the County should not have made them parties.

The sisters then moved for attorney fees and costs pursuant to section 17980.7(c)(11), which states that "[t]he prevailing party in an action pursuant to this section shall be entitled to reasonable attorney's fees and court costs." The court denied the motion based on section 17984, which states that a municipality is not "liable for costs in any action or proceeding that [an] enforcement agency may commence [on its behalf] pursuant to this article," which article contains section 17980.7. The sisters appeal the order denying their motion.

In the published portion of our opinion, we resolve the apparent conflict between these two statutory provisions. When a responding party prevails in a receivership proceeding, we conclude, it is entitled to attorney fees and court costs under section 17980.7(c)(11) because this is the more recent and specific statute, and thus creates an exception to the general rule of section 17984. We also conclude that the sisters were prevailing parties. Accordingly, we reverse the challenged order, remanding with directions to enter a new order awarding the sisters their reasonable attorney fees and costs.

## FACTUAL AND PROCEDURAL BACKGROUND

When Kurtz died in 2020, he was the sole record owner—subject to one deed of trust—of a house in Crescent City. The County in its petition alleged that Kurtz died intestate, and no party has disputed or offered evidence to contradict that allegation.

2

In June 2022, neighbors began complaining to the County's Code Enforcement Office that squatters had moved into the house and were, along with overgrowing vegetation, creating hazardous nuisance conditions that included drug use and sales. The Sheriff's Office searched the property to confirm its dangerous condition, and in May and June 2023, the Code Enforcement Office issued a notice to abate or repair the nuisance, held an administrative hearing thereon, ejected the squatters, and hauled away "approximately 14 tons of trash, junk and debris."

In conjunction with these nuisance-abatement proceedings, a paralegal in the County Counsel's office contacted the sisters and later declared that each had said she had no interest in obtaining or rehabilitating the property. A Code Enforcement officer also made a notation in a case file that unnamed "[h]eirs of the estate" appeared at the June 2023 administrative hearing and "said they do not have any interest in the property."

In October 2023, the County began this proceeding by filing a petition pursuant to section 17980.7(c) to appoint a receiver—California Receivership Group, Inc.—to oversee the property's rehabilitation. The petition named as defendants "Estate of Robert D. Kurtz" and the sisters. It did not allege that the sisters own an interest in the property but asserted that, "since Robert D. Kurtz is deceased, the County has also provided notice to his step-daughter [whom the petition did *not* name as a defendant] and [his two] living sisters, all of whom have done nothing to correct, repair, or abate the violations and have stated that they have no interest in [doing so]." The petition asked the court to authorize the receiver to fund the receivership by borrowing against the property and imposing super-priority liens to pay the receiver's fees, the costs of managing and rehabilitating the property, and the County's costs and attorney fees. (§ 17980.7(c)(4)(G).)

At a hearing in November 2023, the sisters did not appear to oppose the petition, and the court signed an order appointing the receiver. The order states that "The Estate of Robert D. Kurtz and Successors in Interest, Holly Green and Sheryl Allsop (DEFENDANTS) are the Owners of the Real Property."[2] It authorized the receiver, inter alia, to "pay the County its attorneys' fees and costs, as the prevailing party, out of the Receivership Estate, pursuant to . . . [sections] 17980.7(c)(11) and 17980.7[, subdivision ](d)(1)." (Italics omitted.) Over the nine months following this appointment, the receiver rehabilitated the property, sold it, and supervised the buyer in bringing it up to Code.

In September 2024, the receiver concurrently filed a final report and accounting and a motion to discharge itself, exonerate its surety, and direct the payment of fees and costs. The motion requested a "joint and several liability order directing Defendants Estate of Robert D. Kurtz and Successors in Interest Sheryl Allsop and Darla Britt to pay the outstanding receivership fees and costs." The receiver noted that the sale proceeds had sufficed to pay off the one deed of trust on the property and the County's abatement costs, but not "the remaining receivership fees and costs." Citing section 17980.7(c)(15)—"Upon the request of a receiver, a court may require the owner of the property to pay all unrecovered costs associated with the receivership"—the receiver sought an order requiring the estate and the

---

[2] The order provides no explanation for this assertion and ignores the discrepancy between this pair of names and the parties named as defendants in the petition. Ms. Green was the stepdaughter of Kurtz whom the County mentioned in, and served with, the petition to appoint a receiver but did not name as a defendant. The appointment order makes no mention of Ms. Britt, Kurtz's sister who is the other named defendant along with Ms. Allsop.

4

sisters to pay its unrecovered fees and those of the County, in a total amount just over $38,700.[3]

Suddenly facing a prospect of personal liability, Britt and Allsop hired counsel, who filed two documents on their behalf: a belated answer to the petition to appoint a receiver, and an objection to the receiver's request for a discharge order holding the sisters liable for its fees and costs. The answer denied the petition's implicit allegation that an "Estate of Robert D. Kurtz" had been established, and stated as an affirmative defense that the sisters were not subject to liability because they owned no part of the property.

In their objection to the motion for a discharge order, the sisters explained that the receiver should have imposed a super-priority lien to ensure recovery of its fees and costs before distributing the proceeds of the property's sale, as the appointment order had authorized it to do; that the sisters had obtained no benefit from the receivership (see *City of Chula Vista v. Gutierrez* (2012) 207 Cal.App.4th 681, 686); and that they were not owners of the property or successors in interest to an owner, and could not be liable for a receiver's costs under section 17980.7(c)(15) as no estate had been administered. The sisters requested an award of attorney fees and costs.

In reply, the receiver did not claim that Kurtz's estate had been administered. It simply reiterated that a property's "owner," or a "successor in interest" thereto, can be liable for a receiver's unpaid fees and costs (§ 17980.7(c)(15)), citing no authority for the proposition that a sibling of a property owner who died intestate, and whose estate has not been probated,

---

[3] The receiver had more than $33,000 in unpaid fees and unreimbursed advances, expected to incur $3,000 more to wind down the receivership, and stated that the County had nearly $2,500 in unpaid legal fees that section 17980.7, subdivision (d)(1) and the appointment order entitled it to recover.

5

qualifies as an "owner" or "successor in interest." The County filed no papers regarding the discharge motion.

At the hearing, the trial court stated its tentative ruling that the receiver had shown no basis to "pierce the [e]state and go after potential heirs," adding that it was "not convinced that you have authority" to pursue "people who may be unfortunately related by DNA and tag[ ] them." The receiver submitted on the tentative, and the sisters' counsel informed the court they would soon seek an award of attorney fees and costs as prevailing parties. This prompted a response from the receiver's counsel, who asserted the sisters' fees could not be a charge against the receivership estate, to which the court replied—referring to the sisters' lawyer by name— "Mr. Henion had to be hired to protect [roughly $38,000] . . . from being passed on[ ]to potential possible heirs. And part of my problem with that [is] not only is Ms. Allsop supposedly named out but all her children, her grandchildren, her great grandchildren who are heirs, so when does it stop?" The court opined that the sisters "rightfully retained Mr. Henion to protect their lack of interest." It then resolved not to hold the sisters liable, requested that the parties prepare a proposed order designating "Mr. Henion as a prevailing party on that portion," and invited the parties to submit declarations if they thought there was "a liability issue for attorney's fees based on prevailing party."

The sisters promptly moved for an award of attorney fees and costs under section 17980.7(c)(11), which states that "[t]he prevailing party in an action pursuant to this section shall be entitled to reasonable attorney's fees and court costs." In opposition, the County argued that the order appointing a receiver had already deemed the County the "prevailing party" on its petition; that section 17984 barred the court from awarding attorney fees and

6

costs because the County's enforcement agency was a public agency enforcing the state's housing law; and that the sisters were relying on a statutory construction previously rejected in *City and County of San Francisco v. Ballard* (2006) 136 Cal.App.4th 381 (*Ballard*).

In *Ballard*, our colleagues in Division Two held that a property owner could not recover fees under section 17980.7(c)(11) because that case involved "no receivership proceedings." (*Ballard, supra,* 136 Cal.App.4th at p. 401.) The *Ballard* court construed the language of subdivision (c)(11), which on its face applies to any " 'action pursuant to *this section,*' " as limited to actions pursuant to the particular subdivision of section 17980.7 of which it was a part—subdivision (c) regarding receivership proceedings. (*Ballard*, at p. 401, italics added.) In dicta, the court then added that this interpretation of section 17980.7(c)(11) avoided a conflict with section 17984. (*Ballard*, at pp. 402–403.) This was true on the facts of that case. The *Ballard* court's construction of section 17980.7(c)(11) prevented the prevailing property owner from obtaining attorney fees and costs on the ground that the case did not involve a receivership, and this resolution avoided any chance of a conflict with a statute purporting to deny costs for a different reason, namely to shield a public agency from liability. (See § 17984.)

Devoting a large portion of its order to a discussion of *Ballard*, the court resolved the sisters' motion without a hearing. After noting that *Ballard* had "not involve[d] a receivership blight proceeding," the court quoted its dicta that reading section 17980.7(c)(11) to authorize an award of fees and costs against a municipality would contravene section 17984. (*Ballard, supra,* 136 Cal.App.4th at pp. 402–403.) To this, the trial court added that the sisters' request "ignores public policy favoring blight

7

enforcement and flies in the face of prior appellate decisions," though it cited no such decision other than *Ballard*.

The court ended its order thus:  "[T]he County proceeded with, and the trial court granted, a receivership under [section] 17890.7(c).  As such, the County prevailed in the receivership action . . . .  Although the court empathizes with the [sisters'] plight, it is clear that [they] are barred from receiving attorney fees and costs under [section] 17984 as noted above.  Further, the prevailing party in the action is actually the County as [it was] successful in [securing] the appointment of a receiver for the dilapidated property at issue.  Nevertheless, the legislature should look at ways to remedy situations akin to this case [so that] those [related] by accident of birth do not 'inherit' the financial blight problems of their ancestors without agreement to do so."

The court evidently signed both the order denying the sisters' motion for fees (the fees order) and the discharge order on February 13, 2025.  The clerk filed the fees order on February 13 but, for reasons the record does not reveal, did not file the discharge order until February 14.  This timely appeal followed.

### DISCUSSION

After establishing (in the unpublished part of this decision) that this dispute is properly before us, we explain how the trial court erred as to each ground on which it denied the sisters' motion.  We conclude that section 17980.7(c)(11) is best read in accord with its plain language to allow attorney fee and cost awards to any "prevailing party" in a receivership proceeding, even if section 17984 would otherwise prevent an award against a public entity.  (See pp. 12–20, *post*.)  And we conclude the sisters must be considered prevailing parties in this case, as they were completely vindicated

8

on the only issue that affected them and that they disputed—i.e., that they were not properly named as defendants in the case.  (See pp. 20–24, *post*.)  The County's success on other issues, not involving the sisters, cannot absolve it of responsibility for the costs it wrongly compelled the sisters to incur to defeat its meritless claim against them.

## I.

As a preliminary matter, we review the basis for appellate jurisdiction here, where the appealed-from fees order was filed before the discharge order that ended the proceeding.  The sisters' notice of appeal specifies that they appeal the denial of their motion for fees and costs "as contained in" both these orders.[4]  Where the Notice of Appeal form requests the date on which the appealed-from "judgment or order was entered," the sisters listed the dates of entry of both the fees order (February 13) and the discharge order (February 14), although they attached to the notice a copy of only the February 13 fees order.

On appeal, the sisters continue to press the point that they are appealing both orders, noting that the orders were executed on the same day.  They argue that the decision to deny fees "could potentially be viewed as a final judgment," or as an appealable intermediate ruling.

The County contends that section 904.1 authorizes an appeal from only a final judgment (Code Civ. Proc., § 904.1, subd. (a)(1)) or an "order made after a [final] judgment" (*id.*, subd. (a)(2)); that the fees order is neither

---

[4] The sisters also checked a box on the Judicial Council form notice of appeal indicating they were appealing "[a]n order or judgment under Code of Civil Procedure, § 904.1(a)(3)–(13)." We fail to see how any of those subdivisions of section 904.1 applies to this appeal, although subdivision (a)(7) does permit an appeal from "an order *appointing* a receiver" (italics added).

9

because the discharge order is the final judgment and the fees order was filed the day *before* it; and that the sisters cannot appeal the fees order under the "collateral order" doctrine because the order does not require them to pay money or do any act. (See *Sese v. Wells Fargo Bank N.A.* (2016) 2 Cal.App.5th 710, 716 [order denying fees not appealable as collateral order].)

We conclude the sisters have the better part of the argument, and that the fees order is reviewable as an intermediate order on appeal from the discharge order. An order discharging a receiver is appealable as a judgment under Code of Civil Procedure section 904.1, subdivision (a)(1) if it "has the effect of being a final judgment." (*City and County of San Francisco v. Shers* (1995) 38 Cal.App.4th 1831, 1836, citing *Hibernia Savings & Loan Society v. Ellis Estate Co.* (1932) 216 Cal. 280, 281–282.) The County acknowledges, and we agree, that in a proceeding initiated under section 17980.7(c) in which creating a receivership is the animating purpose of the entire proceeding (rather than an ancillary remedial measure in a broader litigation), the order approving the receiver's final accounts, ordering payment to the receiver, discharging the receiver, and exonerating its bond amounts to the "one final judgment" that is subject to appeal. "The one final judgment rule is based on the theory that piecemeal appeals are oppressive and costly, and that optimal appellate review is achieved by allowing appeals only after the entire action is resolved in the trial court." (*Art Movers, Inc. v. Ni West, Inc.* (1992) 3 Cal.App.4th 640, 645.)

As a logical corollary of this rule and as a statutory command we may, on appeal from a final judgment, review "any intermediate . . . order . . . which substantially affects the rights of a party." (Code Civ. Proc., § 906.) By denying the sisters' asserted right to recover their fees and costs, the fees order substantially affects their rights. (See, e.g., *Sweeting v. Murat* (2013)

10

221 Cal.App.4th 507, 511, fn. 6 [order requiring payment satisfies Code Civ. Proc., § 906].)  So, if the sisters have adequately initiated an appeal from the discharge order that serves as the judgment here, we may review the fees order as part of that appeal.

The sisters' notice of appeal clearly meets this standard, especially given that a notice of appeal " ' "shall be liberally construed in favor of its sufficiency." ' " (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 20; see also Cal. Rules of Court, rule 8.100(a)(2); *Luz v. Lopes* (1960) 55 Cal.2d 54, 59.)  The notice of appeal references the discharge order along with the fees order in several places. And although the sisters attached to the notice a copy only of the fees order, they attached copies of both orders to the Civil Case Information Statement filed a month later.  Finally, we note that reading the notice of appeal to encompass the fees order as an intermediate step toward the final judgment causes none of the inefficiencies the one final judgment rule is meant to avoid.  Because this litigation essentially ended in the trial court with the discharge order, our exercise of appellate review poses no risk of oppressive piecemeal dispositions.  (See *Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 5.)

Having concluded that the fees order is reviewable on appeal, we turn next to examining its merits.[5]

---

[5] To the extent the sisters raise other legal issues in their appellate briefing, we conclude those issues are not properly before us.  For example, they contend the "Estate of Robert D. Kurtz" is not a jural entity capable of being a party to litigation because in order to sue an estate, one must name its personal representative (Code Civ. Proc., § 369, subd. (a)(1)), such as a duly appointed executor or administrator.  (*Estate of Bright v. Western Air Lines, Inc.* (1951) 104 Cal.App.2d 827, 828.)  The County does not deny that a judgment for or against a jural nonentity is void (*Oliver v. Swiss Club Tell*

The question of statutory interpretation that lies at the heart of this case is how we are to reconcile two statutes that appear to conflict. If indeed the sisters prevailed in the receivership proceeding initiated against them by the County (see pp. 20–24, *post*), does section 17980.7(c)(11) entitle them to an award of attorney fees and costs? Applying section 17980.7(c)(11) alone, the answer is clearly "yes." The statute states, without qualification, "[t]he prevailing party in an action pursuant to this section"—which this receivership proceeding indisputably is[6]—"shall be entitled to reasonable

---

(1963) 222 Cal.App.2d 528, 537–538, limited by *Jo Redland Trust, U.A.D. 4-6-05 v. CIT Bank, N.A.* (2023) 92 Cal.App.5th 142, 157–161), and that an estate, absent a personal representative, is such a nonentity. But the sisters ask us to redress this assertedly jurisdictional defect by vacating the "judgment" against the estate as void, requiring the receiver and County to disgorge all fees and costs received, and ordering that the disgorged funds be used to pay the sisters' attorney fees and costs. For that novel remedial proposal, the sisters cite no authority.

We conclude the sisters have neither provided an adequate record to address this issue on appeal nor shown how they are aggrieved by, and thus have standing to appeal, orders authorizing the receiver to sell the property at issue and disburse the proceeds. (See *Sabi v. Sterling* (2010) 183 Cal.App.4th 916, 947.) The position the sisters successfully took below was that, because they owned no interest in the property at issue, they should not have been named in litigation about it. We cannot see how they have standing to appeal orders affecting only the very property in which they have disclaimed any interest.

[6] Civil cases have two forms: "action[s]" and "special proceeding[s]." (Code Civ. Proc., §§ 22, 23; see Code Civ. Proc., Pt. 2 [civil actions] [§§ 307–1062.34], Pt. 3 [special proceedings] [§§ 1063–1822.60].) "As a general rule, a special proceeding is confined to the type of case which was not, under the common law or equity practice, either an action at law or a suit in equity." (*Tide Water Assoc. Oil Co. v. Superior Court* (1955) 43 Cal.2d 815, 822.) While no issue in this appeal turns on this distinction, a proceeding solely for appointment of a receiver, such as section 17980.7(c) authorizes, is a novel statutory creation likely to qualify as a special proceeding. (See, e.g., *Murray*

attorney's fees and court costs as may be fixed by the court."
(§ 17980.7(c)(11).) On the other hand, section 17984 states, "[n]either an enforcement agency, . . . nor any city or county for which [it] may act, is liable for costs in any action or proceeding [the] . . . agency may commence pursuant to this article," an article that includes section 17980.7. If "costs," as the term is used in section 17984, includes attorney fees—as the trial court seems to have assumed—then applying section 17984 would require that we answer "no"; the sisters would not be entitled to fees and costs because these could not be recovered from the county. And if section 17984 uses the term "costs" more narrowly, to refer only to litigation costs of the sort that a prevailing party usually recovers via Code of Civil Procedure section 1032 (see *Ballard*, *supra*, 136 Cal.App.4th at p. 402 [discussing *Department of Industrial Relations v. Lee* (1999) 73 Cal.App.4th 763, 769–770]), we still have a conflict between section 17984 and section 17980.7(c)(11) *at least* to the extent of those litigation costs. We therefore resolve the conflict between the two statutes, which we analyze de novo as the issue is one of statutory interpretation. (See *Anoke v. Twitter, Inc.* (2024) 105 Cal.App.5th 153, 158.)

Settled rules govern our resolution of conflicts like the one that arises between these two statutory provisions, in a case where a municipal enforcement agency initiates a section 17980.7 receivership proceeding against a party that then prevails in that proceeding. (*State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 955–960 ["rules we must apply when faced with two irreconcilable statutes are well established"].)

---

*v. Superior Court* (1900) 129 Cal. 628, 632.) We thus refer below to a "proceeding" under section 17980.7(c) for appointment of a receiver, rather than an "action," and to the parties in such a proceeding as "petitioner" and "respondent," not "plaintiff" and "defendant" (though we have not corrected the term "defendant" as it appears in quotations from the record in this case).

Where, as here, statutes conflict and cannot be harmonized, we must construe one "as providing an exception to the other." (*Id.* at p. 956.) In such cases, " 'later enactments supersede earlier ones [citation], and more specific provisions take precedence over more general ones [citation].' [Citation.] But when these two rules are in conflict, the rule that specific provisions take precedence over more general ones trumps the rule that later-enacted statutes have precedence." (*Id.* at p. 960.)

Here, the two interpretive rules point in the same direction. Section 17980.7(c)(11) is both more specific and more recently enacted than section 17984. This becomes clear when we trace the evolution of the statutory scheme.

In 1961, the Legislature enacted section 17984 as part of the State Housing Law (§§ 17910–17998.3). (Stats. 1961, ch. 1844, § 8, p. 3925.)[7] It placed section 17984 in the Actions and Proceedings article (§§ 17980–17992) of the Administration and Enforcement chapter of the law. This article addresses a broad range of abatement—and, now, receivership—proceedings. (See, e.g., § 17980 [authorizing an action or proceeding to abate a nuisance or remove a violation of state building standards, municipal code, or other rules and regulations].) Section 17984 applies in all of them—"in any action or proceeding that [an] enforcement agency may commence pursuant to this article." (§ 17984.) "[T]his article" includes, but extends well beyond,

---

[7] The Legislature derived section 17984 from the former section 15294, which it enacted in 1939 as part of a codification of existing statutes into the new Health and Safety Code. (Stats. 1939, ch. 60, § 15294, p. 879.) Section 15294, in turn, had codified a substantively identical provision enacted in 1923. (Stats. 1923, ch. 386, § 76, p. 829.) Our research did not reveal, and the parties have not cited, any authority construing either predecessor of section 17984.

14

section 17980.7(c), the provision under which the County's enforcement agency initiated the current receivership proceeding.

In 1988, the Legislature enacted section 17980.7 and the interrelated section 17980.6. (Stats. 1988, ch. 1567, §§ 1–2.) Section 17980.6 authorizes an enforcement agency to issue an order or notice to repair or abate violations of the State Housing Law and related standards or ordinances if a property's violations "substantially endanger[ ]" the "health and safety of residents or the public." (§ 17980.6.) Section 17980.7, in turn, authorizes remedies for a building owner's failure to timely comply with such an order or notice. (§ 17980.7.)

As enacted in 1988 (and still today), section 17980.7 authorizes an agency to seek at least two sets of remedies: certain misdemeanor, contempt, and other penalties provided in sections 17995–17995.5 (§ 17980.7, subd. (a)), and an order barring the owner from claiming certain tax deductions for the property (*id.*, subd. (b)). (See Stats. 1988, ch. 1567, § 2, adding § 17980.7(a)–(b).) Section 17980.7 also requires a court, upon finding that a building's condition "substantially endangers the health and safety of residents," to order its owner to pay the enforcement agency's costs of inspection, enforcement, and litigation, and to order the agency to notify tenants of its ruling. (Stats. 1988, ch. 1567, § 2, adding § 17980.7(c)(1)–(2), later redesignated § 17980.7, subdivision (d)(1)–(2) by Stats. 1990, ch. 1334, § 1.) In 1989, the Legislature amended section 17980.7 to offer yet another possible remedy: tenant relocation benefits. (Stats. 1989, ch. 1194, § 1 (Assem. Bill No. 1448), adding § 17980.7(c)(3).)

Then in 1990, the Legislature again expanded the remedies afforded by section 17980.7 when it added the new subdivision (c). (Stats. 1990, ch. 1334, § 1 (Assem. Bill No. 3492).) The new subdivision states that an "enforcement

15

agency, tenant, or tenant association or organization may seek and the court may order, the appointment of a receiver for the substandard building." (§ 17980.7(c)(1).) A committee report explained: While enforcement agencies previously had "authority to cite buildings, fine owners, and refer cases for lawsuit," the threat of such penalties "[did] not deter certain landlord[s] who, in spite of citations, continue[d] to earn profits from rents without dedicating any funding to maintenance and repairs." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3492 (1989–1990 Reg. Sess.) as amended June 28, 1990, at p. 2.)[8] Prior law authorized trial courts to appoint receivers in circumstances that could encompass such cases (see Code Civ. Proc., § 564), but few courts had done so—a judicial reluctance likely due to "the absence of specific legal authority for appointment of receivers" for "the purpose of overseeing repairs on substandard residential property." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3492, at p. 2.)

This history makes readily apparent that the bilateral fees and costs provision in section 17980.7(c)(11) is both more specific and more recently enacted than section 17984. It is more specific because section 17980.7(c)(11) applies only to "an action pursuant to *this section*" (i.e., § 17980.7, italics

---

[8] On our own motion and without opposition from any party, we take judicial notice of the legislative history of Assembly Bill No. 3492 (1989–1990 Reg. Sess.). (See *County of Sonoma v. Quail* (2020) 56 Cal.App.5th 657, 676, fn. 7.) Courts sometimes conclude it is unnecessary to seek or take judicial notice of such legislative history materials because citation to published materials suffices. (See, e.g., *Wittenburg v. Beachwalk Homeowners Assn.* (2013) 217 Cal.App.4th 654, 665, fn. 4.) But because legislative history materials are less publicly available for legislation enacted before the 1993–1994 legislative session (<https://www.library.ca.gov/law/online-research> [as of June 4, 2026] ["Bill analyses . . . can be found back to the 1993–1994 session online through leginfo[.legislature.ca.gov]"]), we consider judicial notice appropriate here.

added),[9] while section 17984 applies to "any action or proceeding [an] enforcement agency may commence pursuant to *this article*" (i.e., §§ 17980–17992, italics added). And section 17980.7(c)(11) is later enacted because the Legislature added it to the State Housing Law 29 years after enacting section 17984.

The county derives from the enactment history of section 17980.7 a different lesson. In 1990, it points out, the Legislature simultaneously added the receivership remedy and the bilateral attorney fees provision, while also for the first time authorizing tenants as well as enforcement agencies to initiate enforcement proceedings. (See § 17980.7(c) ["The enforcement agency, tenant, or tenant association or organization may seek . . . appointment of a receiver"].) Linking the 1990 Legislature's novel addition of a bilateral attorney fee provision to its simultaneous, equally novel authorization of private enforcement actions, the County "infer[s] the *prevailing party* language was added because the legislature opened the door for tenants and tenant associations or organizations to bring these types of cases." On this theory, the "prevailing party" language implicitly authorizes an award in favor of a successful respondent against only a *private* party who petitions unsuccessfully for appointment of a receiver, but not against a municipality, whom section 17984 still shields.[10]

---

[9] As construed in *Ballard*, section 17980.7(c)(11) is narrower still, as *Ballard* holds that section 17980.7(c)(11) applies only to receivership proceedings brought pursuant to subdivision (c), rather than actions or proceedings pursuant to other portions of section 17980.7. (*Ballard*, *supra*, 136 Cal.App.4th at p. 401.) Although we have our doubts about this conclusion (see p. 18, *post*), that difference of opinion is not dispositive here.

[10] In this limited regard, section 17980.7(c)(11) is more general than section 17984: It authorizes a fee award in favor of a successful respondent regardless of who initiated the proceeding, whereas section 17984 bars such an award only in a proceeding initiated by an enforcement agency. But it is

17

That is a clever hypothesis, but the legislative history simply does not bear it out. Our review has not revealed—and the County has not cited—any passage in the legislative history drawing a connection between the bill's expansion of the ability to initiate enforcement proceedings to include private actors and its addition of a bilateral attorney fees provision. Indeed, we find in the legislative history no discussion of, let alone emphasis on, the novelty of the provision authorizing privately initiated enforcement proceedings. Instead, the consistent focus is on the need for, and nature of, the receivership remedy and the details of its implementation—not on *who* would be able to pursue it.[11]

Also interesting in the legislative history are passages expressly advising lawmakers that the new bilateral fees provision would "appl[y] not only to actions involving the appointment of a receiver"; the new provision would also apply "to actions under existing law for imposition of monetary penalties and [denial of] . . . the right to claim tax deductions on the property."[12] These passages suggest the Legislature understood and

hard to see how, in a tenant-initiated proceeding, a respondent could procure a costs award *against an enforcement agency* (rather than against the tenant-petitioner(s)), so in a tenant-initiated proceeding there would be no conflict between applying section 17980.7(c)(11) and section 17984.

[11] See Assembly Bill No. 3294, as introduced February 28, 1990, Assembly Committee on House & Community Development Report (April 5, 1990); Assembly Bill No. 3294, as amended June 7, 1990, Assembly Third Reading Analysis (June 12, 1990); Assembly Bill No. 3294, as amended June 28, 1990; Senate Third Reading Analysis (Aug. 10, 1990) at pages 2–4; Senate Committee on Judicial Report (July 3, 1990) at page 2; Assembly Bill No. 3294, Concurrence in Senate Amendments (Aug. 30, 1990), at page 3.

[12] Assembly Bill No. 3294, as amended June 28, 1990, Senate Third Reading Analysis (Aug. 10, 1990) at page 2; Senate. Committee on Judicial Report (July 3, 1990) at page 4; accord, Assembly Bill No. 3294, Concurrence in Senate Amendments (Aug. 30, 1990), at page 3 [similar].

intended that the new section 17980.7(c)(11) would apply to the entirety of section 17980.7. Had the Legislature instead intended to limit the bilateral fees provision to receivership actions pursuant to section 17980.7(c) (see *Ballard, supra,* 136 Cal.App.4th at p. 401), it would have had no occasion to mention the monetary penalties available under subdivision (a) of section 17980.7 or the barring of tax deductions pursuant to subdivision (b).

These passages in the legislative history are significant because, unlike the newly created receivership provision, the "actions under existing law" were—and remain—ones that *only an enforcement agency can initiate.* (See § 17980.7, subd. (a) ["The enforcement agency may seek . . . penalties provided for under Chapter 6" ]; *id.,* subd. (b)(1) ["The enforcement agency may seek . . . [an order] to not claim any deduction"].) The committee report and floor analyses advised lawmakers, in sum, that the new provision authorizing a fee award to "the prevailing party"—without qualification as to which party that might be—would apply to actions of a sort that only enforcement agencies could initiate. By enacting a bilateral fees provision applicable to types of proceedings that only an enforcement agency could initiate, the Legislature necessarily, if implicitly, conveyed an intent to permit fee awards against the municipalities on whose behalf such agencies act, and thus to create an exception to the more general, earlier enacted section 17984.

The County attempts to short-circuit this analysis by relying on language in *Ballard* addressing the tension between section 17980.7(c)(11) and section 17984. This approach is unavailing for two reasons. First, that case is easily distinguished because in *Ballard* "there were no receivership proceedings." (*Ballard, supra,* 136 Cal.App.4th at p. 401.) The absence of a receivership proceeding was dispositive there, and it is clearly contrary to the

19

procedural context here. Second, the dicta in *Ballard* fails to persuade because the *Ballard* court did not address established canons for choosing between statutes that conflict and cannot be harmonized, and the court appears not to have had the benefit of section 17980.7(c)(11)'s legislative history.

In sum, we conclude the plain language of section 17980.7(c)(11) authorizes a fee award in favor of "the prevailing party in an action pursuant to this section," without regard to whether the losing party is a private or public actor; the rules of statutory construction dictate that this more specific, more recent enactment creates an exception to the general rule of section 17984; and nothing in the legislative history suggests that we should not apply those long-settled rules to the plain language of these statutes. Section 17980.7(c)(11) authorizes a fee award against the County, so long as the sisters qualified as prevailing parties—a final disputed issue to which we now turn.

## III.

The trial court ruled that it was unable to award the sisters their attorney fees, not only because section 17984 barred it from doing so, but also because "the prevailing party in the action is actually the County," which successfully secured "the appointment of a receiver." Here the court was mistaken in a way illuminated by its previous directive to counsel, at the end of the hearing at which it found the sisters not liable for receivership expenses, to prepare a proposed order designating the sisters as "a prevailing party on that portion." The reality that underlies the court's seemingly self-contradictory comments is that *both* the County *and* the sisters were prevailing parties as to different aspects of the proceeding. The County prevailed in its attempt to secure the appointment of a receiver, and

20

ultimately attained its primary litigation objective of having the property's nuisances abated, Code violations repaired, and stewardship transferred to new owners. But the sisters prevailed just as fully in what was not only their primary, but their sole, litigation objective—to escape the case without incurring any liability. In these circumstances, we conclude the sisters are "the prevailing party" on the County's claim against them, entitling them to attorney fees and costs under section 17980.7(c)(11).

Neither party has cited, and we have not found, any decision addressing how to identify "the prevailing party" under section 17980.7(c)(11) in a case like this, with more than two named parties (i.e., the County, the "Estate of Robert D. Kurtz," and the sisters). The County infers from the statute's reference to "the prevailing party" that there can be but one "prevailing party" in a section 17980.7(c) receivership proceeding, and it insists that it was that party because it secured the receiver's appointment, which led to the nuisances' abatement. The sisters contend that a case can have multiple prevailing parties. (Citing *Sharif v. Mehusa, Inc.* (2015) 241 Cal.App.4th 185, 188 ["there can be a prevailing party for one cause of action and a different prevailing party for the other"].)

The County cites no authority holding that there can never be more than one prevailing party for purposes of section 17980.7(c)(11). It cites *City of Norco v. Mugar* (2020) 59 Cal.App.5th 786, which affirmed a fee award to a city in a section 17980.7(c) proceeding, but the case is easily distinguished. It involved just two parties—a city and a property owner—and the lone dispute on appeal was whether the trial court rightly awarded the city its fees after appointing a receiver but ending the receivership as soon as the owner made the needed repairs himself. (*City of Norco*, at pp. 799–801.) The court's reasoning was simple: Section 17980.7(c)(1) "does not define the term

21

'prevailing party,' " so a trial court must " 'analyze[ ] which party had prevailed on a practical level' " (*City of Norco*, at p. 800), and the trial court in that case acted within its discretion in concluding the city had prevailed. (*Ibid.*) "The City's litigation objective was to abate a public nuisance," the court reasoned, and while its petition had "contemplated the appointment of a receiver to accomplish that end, . . . prompting [the owner] to complete the work himself, without a receiver having to do so, achieved the same result." (*Id.* at pp. 800–801.)

While we agree with that analysis, its only relevance here is to indicate that we should assess who prevailed " 'on a practical level' " by asking which parties achieved their litigation objective(s). (*City of Norco v. Mugar*, *supra*, 59 Cal.App.5th at p. 800.) Viewing the case through that lens, we readily conclude that, while the County largely prevailed in achieving its objectives, the sisters entirely prevailed in achieving theirs. As between the County and the sisters, the County failed in its effort to require the sisters to bear some of the costs of rehabilitating the property, while the sisters escaped without liability from a case in which they never should have been named.

In the absence of relevant precedent under section 17980.7(c)(11), we find instructive a decision in a three-party case assessing liability for fees under Civil Code section 1717, which governs fee awards in contract actions. (See *Burkhalter Kessler Clement & George LLP v. Hamilton* (2018) 19 Cal.App.5th 38, 44–46 (*Burkhalter*).) In that case, a law firm (Burkhalter) sublet office space to a partnership called Eclipse, through a lease that entitled the prevailing party in any lawsuit to fees. (*Id.* at pp. 40–41.) Burkhalter sued Eclipse for breach and also named Jennifer Hamilton, an Eclipse partner, on an alter ego theory. (*Id.* at p. 41.) Burkhalter prevailed against Eclipse on its breach of contract claim, but Hamilton prevailed

against Burkhalter on the alter ego claim, securing a dismissal. (*Ibid.*) After the trial court awarded Burkhalter its fees but denied Hamilton hers, the Fourth District reversed the latter ruling. (*Ibid.*) It held that, while the applicable statute authorized a fee award to "the party who is determined to be the party prevailing on the contract" (Civ. Code, § 1717), and while "[g]enerally, under section 1717, 'there can only be one prevailing party' in a particular lawsuit" (*Burkhalter*, at pp. 43, 44), in some cases "involving more than two parties, there may be more than one 'prevailing party' entitled to contractual attorney fees." (*Id.* at p. 41.) In the case before it, the court held, Burkhalter and Hamilton were both "prevailing parties." (*Ibid.*)

Despite superficial differences in the applicable statutes and claims, this case is identical in structure. Section 17980.7(c)(11)'s text authorizing an award to "the prevailing party" is functionally identical to Civil Code section 1717's text authorizing an award to "the party prevailing on the contract"; each uses a definite article that might imply a need to identify a *single* prevailing party. In *Burkhalter*, the plaintiff was right that there had been a breach of legal duty requiring a remedy—i.e., a breach of contract— but wrong in its claim that a certain individual (Hamilton) should be held legally responsible for the breach. (*Burkhalter*, *supra*, 19 Cal.App.5th at pp. 45–46.) Here, the County was right that there had been a breach of a legal duty requiring a remedy—i.e., a public nuisance and Code violations warranting the appointment of a receiver—but wrong in its claim that the sisters should be held legally responsible for that breach.

In each case—as the *Burkhalter* court held, and we now hold—the improperly named individual defendant(s) were entitled to recover the attorney fees they reasonably incurred to avoid being saddled with liability for wrongs attributable to an entity with which they were related (by

23

partnership or by DNA) but for whose failures they were not legally responsible. (*Burkhalter*, *supra*, 19 Cal.App.5th at p. 46.) In each case, the plaintiff was the prevailing party on its primary claim, but the individual defendants were prevailing parties on the claims by which the plaintiffs had improperly sought to extend liability *to them*.

As the *Burkhalter* court persuasively framed the issue, "Burkhalter's alter ego claim against Hamilton must be separately examined to determine the 'prevailing party' *as between those two litigants*." (*Burkhalter*, *supra*, 19 Cal.App.5th at p. 45, italics added.) That examination made it "apparent that Hamilton is a prevailing party on the contract," as she "secured an unqualified victory against Burkhalter by obtaining a judgment of dismissal with prejudice." (*Id*. at p. 46.) Here, the trial court did not formally dismiss the sisters, but that was only because, at the same hearing at which it ruled that they should not have been sued, it agreed to sign a proposed order discharging the receiver and concluding the case—after striking proposed terms making the sisters liable. At that terminal stage of the litigation, its ruling was the practical equivalent of a dismissal. Thus, when we "separately examine[ ]" the County's potential-heirs claim against the sisters "to determine the 'prevailing party' as between those two litigants" (*Burkhalter*, at p. 45), we find it clear the sisters were prevailing parties.

## DISPOSITION

The February 13, 2025 Ruling Re: Attorney Fees and Costs is reversed, and the matter is remanded with instructions to enter a new order awarding respondents Allsop and Britt their attorney fees and costs pursuant to section 17980.7(c)(11), after conducting further proceedings to determine the recoverable amount thereof. The February 14, 2025 Order Discharging Receiver and Directing Payment of Fees and Costs is, in all other respects,

24

affirmed.  Allsop and Britt shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(c).)

TUCHER, P. J.


WE CONCUR:


FUJISAKI, J.
RODRÍGUEZ, J.


*County of Del Norte v. Britt et al.* (A173145)

Trial Court: Del Norte County Superior Court

Trial Judge: Hon. Darren McElfresh

Counsel: Dohn R. Henion for Defendants and Appellants

Jacqueline Roberts, County Counsel, Edwin Aguilar-Miramontes, Deputy County Counsel for Plaintiff and Respondent

California Receivership Group, Mark S. Adams and Thomas A. Yatteau for Claimant and Respondent